**Carmine ROMANO, Plaintiff-Appellant,**

v.

**Dennis LUTHER, Warden, and Benjamin F. Baer, Chairman, Defendants-Appellees.**

**No. 754, Docket 86–2375.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1987.

Decided April 3, 1987.

Stanley M. Brand, Washington, D.C. (Sean Connelly, Brand & Lowell, Washington, D.C., Linda S. Sheffield, Atlanta, Ga., on the brief), for plaintiff-appellant.

Frank H. Santoro, Asst. U.S. Atty., New Haven, Conn. (Stanley A. Twardy, Jr., U.S. Atty., New Haven, Conn., on the brief), for defendants-appellees.

Peter Goldberger, Alan Ellis, Ellis & Newman, Phil., Pa., submitted an amicus curiae brief for Nat. Ass'n of Criminal Defense Lawyers.

Before NEWMAN, CARDAMONE, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The Comprehensive Crime Control Act of 1984 ("CCCA" or "Crime Control Act") introduced a number of changes into the administration of federal criminal justice, including a sweeping revision of sentencing law and process. The current system whereby judges exercise broad discretion to impose indeterminate sentences and the United States Parole Commission determines how much of the sentence will be served in prison will be replaced by a new system under which judges will impose determinate sentences under guidelines to be issued by the United States Sentencing Commission and parole will be abolished. This appeal concerns the duties of the Parole Commission under the transition provisions of the CCCA governing the shift from indeterminate sentences with parole to fixed sentences without parole. Specifically, the appeal concerns the scope and timing of the obligation imposed by subsection 235(b)(3) of the CCCA upon the Parole Commission to set a parole release date for certain federal prisoners that falls within their applicable parole guideline ranges. The appeal is brought by Carmine Romano from a judgment of the District Court for the District of Connecticut (T.F. Gilroy

Daly, Chief Judge) denying his petition for a writ of habeas corpus. Romano contended that he is currently entitled to the benefit of subsection 235(b)(3). The District Court rejected this contention. For reasons that follow, we affirm the judgment of the District Court, although we do not entirely share the District Court's interpretation of subsection 235(b)(3).

## Background

Romano has been in custody since his arrest in October 1981. On February 5, 1982, Romano received a twelve-year sentence for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (1982); conspiring to violate RICO, 18 U.S.C. § 1962(d); aiding and abetting violations of the Taft-Hartley Act, 29 U.S.C. § 186(b)(1) (1982), and 18 U.S.C. § 2 (1982); and misusing union funds in violation of 18 U.S.C. § 1954(1) & (2) (1982) and 18 U.S.C. § 2. *United States v. Romano*, 684 F.2d 1057 (2d Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 376, 74 L.Ed.2d 509 (1982). Present federal parole guidelines indicate a period of incarceration of 40–52 months for persons with Romano's "offense characteristics" and "offender characteristics." 28 C.F.R. § 2.20 (1986); *Romano v. Baer*, 805 F.2d 268, 269 (7th Cir.1986). Nonetheless, the Parole Commission has chosen to continue Romano to the expiration of his sentence because of aggravating factors of his offense. *See id.* at 271 (rejecting Romano's claim that the Parole Commission impermissibly double-counted "aggravating factors" of the crime in continuing Romano beyond the guideline period). Absent forfeiture of good-time credits, Romano is scheduled for mandatory release on November 27, 1988.

On February 28, 1986, Romano brought before the Parole Commission a claim that subsection 235(b)(3) of the CCCA requires the Commission immediately to set release dates for all federal prisoners within the applicable parole guidelines. The Commission rejected this view of subsection 235(b)(3). After exhausting his administrative remedies, Romano petitioned the District Court for a writ of habeas corpus. The Government opposed the petition, contending that subsection 235(b)(3) will not become effective until November 1, 1987. Chief Judge Daly rejected that argument but nonetheless denied Romano's petition on the merits, holding that "[t]he section only requires the Commission to set a release date early enough so that an inmate can appeal before October 12, 1989," Memorandum of Decision of the District Court at 5 (Sept. 23, 1986). The District Court also ruled that subsection 235(b)(3) does not violate equal protection requirements.

## Discussion

The issues presented by this appeal require understanding of the statutory framework of the CCCA. Unfortunately, that understanding is obscured by the nomenclature used by Congress in the text of the CCCA and in the legislative history, especially the terminology used to describe the various components of the statute. Because the statute is an amalgamation of various bills originally drafted in the expectation of being enacted independently of other bills, some ambiguity was created when the components were consolidated in the CCCA.

The Comprehensive Crime Control Act was enacted as Title II of House Joint Resolution 648, 98th Cong., 2d Sess.Pub.L. No. 98–473, 98 Stat. 1837 (1984).[1] The preamble of Title II states that the title may be cited as the "Comprehensive Crime Control Act of 1984." The CCCA contains 23 chapters, each making changes in a different area of federal criminal law. Chapter II of the CCCA creates the new system of determinate sentences to be imposed under sentencing guidelines, CCCA § 212, and abolishes parole, *id.* § 218(a)(5). Section 211, the first section of Chapter II states that the chapter may be cited as the "Sentencing Reform Act of 1984." Chap-

---

**1.** Title I of H.R.J.Res. 648 is a so-called continuing resolution, continuing appropriations for various departments for fiscal year 1985.

ter II was originally drafted as a separate bill. S. 668, 98th Cong., 1st Sess. (1983). Thus, the statute at issue contains more than one component that may correctly be referred to as an "act": the Crime Control Act and the Sentencing Reform Act.[2]

Section 235 of the Crime Control Act is headed "EFFECTIVE DATE." It establishes a uniform effective date for most provisions of Chapter II (the Sentencing Reform Act), provides for certain exceptions to the uniform effective date, and contains special provisions related to the transition from the current system of sentencing to the new system. Subsection 235(a)(1), as originally enacted, provides that "This chapter," i.e., Chapter II, the Sentencing Reform Act, "shall take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment" with some exceptions. Congress subsequently extended the twenty-four month period to thirty-six months. Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985). Since H.R.J.Res. 648, containing the entirety of the Crime Control Act, was enacted on October 12, 1984, the effective date prescribed in subsection 235(a)(1) for most of the Sentencing Reform Act is now November 1, 1987.

One of the exceptions to the effective date provision of subsection 235(a)(1) concerns the timetable for the issuance and effectiveness of the sentencing guidelines, the keystone of the new sentencing system. Subsection 235(a)(1)(B)(i) provides that Chapter 58 of Title 28, United States Code,

which creates the Sentencing Commission, see CCCA § 217(a), shall take effect "on the date of enactment of this Act or October 1, 1983, whichever occurs later." Whether "this Act" in the quoted phrase refers to the Crime Control Act as a whole or its component, the Sentencing Reform Act, makes no difference, since both were simultaneously enacted on October 12, 1984. The legislative history makes clear that Congress wanted the Sentencing Commission to begin its work promptly. See S.Rep. No. 225, 98th Cong., 1st Sess. 188, *reprinted in* 1984 U.S.Code & Admin.News 3182, 3371 ("Senate Report"). Thus, the Sentencing Commission was established as of October 12, 1984. Subsection 235(a)(1)(B)(i), as originally enacted, further provides that the Sentencing Commission shall submit the initial sentencing guidelines "within eighteen months of the effective date of the chapter." Congress subsequently extended the eighteen-month period to thirty months, Pub.L. No. 99–217, *supra*, § 2(a), and more recently amended the phrase "the chapter" to read "such chapter 58," Pub.L. No. 99–646, § 35(1), 100 Stat. 3592, 3599 (1986). Since Chapter 58 became effective on October 12, 1984 (the enactment date of the Crime Control Act and its component, the Sentencing Reform Act), the current deadline for submission of the sentencing guidelines would be April 12, 1987; however, that date is a Sunday, and the submission date is therefore April 13 1987.[3]

**2.** In addition, the CCCA provides that other chapters are to be cited as "acts," *e.g.,* Chapter I, the "Bail Reform Act of 1984"; Chapter III, the "Comprehensive Forfeiture Act of 1984"; Chapter IV, the "Insanity Defense Reform Act of 1984." Even some parts of chapters are to be cited as "acts," *e.g.,* Part B of Chapter V, the "Dangerous Drug Diversion Control Act of 1984."

**3.** In placing the date the guidelines must be submitted to Congress at April 13, 1987, we are relying on the time computation method set forth in Fed.R.Crim.P. 45(a):

In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, ... in which

event the period runs until the end of the next day which is not one of the aforementioned days.

See *Burnet v. Willingham Loan & Trust Co.,* 282 U.S. 437, 439, 51 S.Ct. 185, 75 L.Ed. 448 (1931) (per curiam); *United States v. Carver,* 671 F.2d 577 (D.C.Cir.1982); *United States v. Barton,* 647 F.2d 224, 229–30 n. 5 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. Macklin,* 523 F.2d 193, 194 n. 1 (2d Cir.1975). We have deemed Rule 45(a) applicable to the computation of time periods in statutes. *United States v. Melendez-Carrion,* 790 F.2d 984, 991 (2d Cir.), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). We note that the United States Sentencing Commission believes the deadline for submission of the guidelines is April 13, 1987. United States Sentencing Commission, Revised Draft Sentencing Guidelines 2 (1987). We also note that the

The effective date of the sentencing guidelines is governed by subsection 235(a)(1)(B)(ii). As enacted, this subsection provided that the guidelines shall go into effect the day after the completion of three events: the submission of the guidelines to Congress; the completion of a study of the guidelines by the General Accounting Office, which must be sent to Congress within 150 days of the submission of the guidelines; and the elapse of six months from the submission of the guidelines to afford Congress an opportunity to study them. *See* CCCA § 235(a)(1)(B)(ii)(I), (II), (III). Thus, the latest date the guidelines originally would have become effective was October 13, 1987. In the most recent amendment of the Crime Control Act, Congress synchronized the effective dates for the sentencing guidelines and the effective date of the Sentencing Reform Act by amending subsection 235(a)(1)(B)(ii) to provide that the initial set of guidelines shall not go into effect until November 1, 1987. Pub.L. No. 99–646, *supra*, § 35(2).[4]

Having established the timetable for the submission and effective date of the guidelines, Congress then included in subsection 235(b) several provisions concerning the transition from the current to the new sentencing system. For example, with respect to those sentenced under the current system, subsection 235(b)(1) continues in effect for a five-year transition period various provisions of existing law, including Chapter 311 of Title 18 of the United States Code, the chapter establishing the United States Parole Commission and defining its duties. *See* CCCA § 235(b)(1)(A). And subsection 235(b)(3), set out in the margin,[5] the provision at issue on this appeal, requires the Parole Commission, prior to its abolition, to set a parole release date for certain prisoners within their applicable guideline ranges; the category of affected prisoners is defined with reference to the five-year transition period. Since the starting date for the five-year period mentioned in several of the subsections of subsection 235(b) is a matter of dispute on this appeal, this matter must be examined further.

Subsection 235(b)(1), extending certain provisions of existing law, provides that the listed provisions "in effect on the day before the effective date of this Act shall remain in effect for five years after the effective date as to an individual convicted of an offense ... before the effective

House Committee on the Judiciary, in a report accompanying the Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. No. 99–646, *supra,* has expressed the view that the guidelines must be submitted to Congress no later than April 12, 1987. See H.R.Rep. No. 797, 99th Cong., 2d Sess. 23, *reprinted in* 1987 U.S. Code Cong. & Admin.News 6138, 6146. Though the views of a committee of the 99th Congress are not authoritative as to the meaning of a statute passed by the 98th Congress, they are relevant, *see Bell v. New Jersey,* 461 U.S. 773, 784–85, 103 S.Ct. 2187, 2193–94, 76 L.Ed.2d 312 (1983), especially when the committee is making technical amendments to recently enacted legislation.

    Since the precise day of the month marking the start and end of the various time periods in the Sentencing Reform Act is not relevant to any of the issues on this appeal and since the parties have not briefed such issues in detail, we should not be understood to have adjudicated such issues.

**4.** Section 35(2) of Pub.L. No. 99–646 amends subsection 235(a)(1)(B)(ii) by moving the phrase "the day after" from its original position, where it modified the entire three-event sequence of submission of the guidelines to Con-

gress, the General Accounting Office study, and the six-month opportunity for Congressional study, to subsection 235(a)(1)(B)(ii)(III), where it modifies only the six-month period for Congressional study. More significantly, section 35(2) modifies subsection 235(a)(1)(B)(ii)(IV) to add a fourth event that must precede the effectiveness of the sentencing guidelines—section 212(a)(2) of the Crime Control Act taking effect; that subsection, which revises the sentencing provisions of Title 18, United States Code, takes effect on November 1, 1987, pursuant to the effective date provision of the Sentencing Reform Act, CCCA § 235(a)(1), as amended by Pub.L. No. 99–217, *supra.*

**5.** Subsection 235(b)(3) provides:

    The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

date...." Subsection 235(b)(3), applies to an individual "who will be in [the Parole Commission's] jurisdiction the day before the expiration of five years after the effective date of this Act...." The starting date of the five-year transition period is obviously keyed to "the effective date of this Act," but there is ambiguity whether "this Act" means the Crime Control Act as a whole or the Sentencing Reform Act. Since the Crime Control Act has no effective date provision governing the entirety of the CCCA, it became effective upon enactment, *see United States v. Shaffer*, 789 F.2d 682, 686–87 (9th Cir.1986), except to the extent that specific provisions of the CCCA otherwise provide. The Sentencing Reform Act, however, as we have seen, has an effective date of November 1, 1987, with specified exceptions. The District Judge ruled that "this Act" in subsections 235(b)(1) and (3) refers to the Crime Control Act and that the five-year transition period therefore runs from October 12, 1984, to October 12, 1989. The Government contends that "this Act" refers to the Sentencing Reform Act and that the five-year transition period therefore runs from November 1, 1987, to November 1, 1992.

▮ We agree with the Government that the five-year period begins on November 1, 1987.[6] The text of subsection 235(b) provides no guidance on the issue, but the structure of the Sentencing Reform Act, the legislative history, and the wording of the bills that were the precursors of the Sentencing Reform Act provide clear indications of Congress's intent.

The Sentencing Reform Act makes a major change in federal sentencing and parole practices by replacing indeterminate sentences and parole with determinate sentences and no parole. Once the new sentencing system begins on November 1, 1987, the role of the Parole Commission is eliminated as to prisoners sentenced under the new sentencing system. Congress recognized, however, that a transition period should be established during which the Parole Commission should discharge its final responsibilities toward those sentenced un-

der the preexisting law. Subsection 235(b)(3) specifies a five-year transition period and instructs the Commission as to its obligations during that period. It would make little sense to start the running of the five-year transition period at a point significantly different from the date on which the new sentencing provisions become effective. Since the date on which the new sentencing system will begin is November 1, 1987, interpreting "this Act" in subsections 235(b)(1) and (3) to mean the Sentencing Reform Act will start the five-year transition period on November 1, 1987, thereby synchronizing the start of the transition period with the inauguration of the new sentencing system.

Moreover, if the five-year transition period begins on October 12, 1984, the effective date of the CCCA, two odd consequences would result. First, the transition period would begin approximately two years before the new sentencing system begins. Second, the recent action of Congress in postponing the effective date of the sentencing guidelines an additional year to November 1, 1987, would have the effect of throwing off by an additional year the fit between the start of the transition period · and the start of the new sentencing system.

The legislative history of the CCCA supports our conclusion. The Senate version of the bill that became the CCCA was divided into titles rather than chapters. S. 1762, 98th Cong., 1st Sess. (1983). In its report explaining this version of the CCCA, the Senate Committee on the Judiciary repeatedly used the term "title" to refer to the Sentencing Reform Act and specifies that the five-year transition period follows the effective date of "this title," *i.e.*, the Sentencing Reform Act:

SECTION 225 [235 in final form]. EFFECTIVE DATE

Subsection (a) of section 2[3]5 contains the effective date provision for this *title*. It provides that, with three exceptions, this *title* will take effect on the first day of the first calendar

6. *See* note 3, *supra.*

month beginning twenty-four [now 36] months after the date of enactment.

.   .   .   .   .

The *title* will apply to any offense or other event occurring on or after the effective date. A sentence imposed before the effective date of the guidelines as to an individual imprisoned or on probation or parole on that date would not be affected by this *title*. As to an offense committed prior to the effective date, the preexisting law will apply as to all substantive matters including the imposable sentence....

Subsection (b) retains the Parole Commission and current law provisions related to parole in effect *for the five-year period after the effective date of this title* in order to deal with sentences imposed under current sentencing practices.... This will assure that the length of a term of imprisonment, and the parole and good time statutes, will remain in effect as to any prisoner *sentenced before the sentencing guidelines* ... go into effect pursuant to subsection (a)(1)(B)....

Senate Report at 188–89, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3371–72 (emphasis added).[7] This explanation of the effective date provision of the Sentencing Reform Act clearly indicates that Congress intended the five-year transition period of subsection 235(b)(3) to begin with the concurrent implementation of the sentencing guidelines and repeal of the current parole system.

The versions of the Sentencing Reform Act that preceded S. 1762 also demonstrate Congress's concern that the five-year transition period should begin when the new sentencing system begins. S. 668 was a version of the Sentencing Reform Act in the 98th Congress that contained only sentencing provisions. Its preamble recited that "this title may be cited as the 'Sentencing Reform Act of 1983.'" S. 668, 98th Cong., 1st Sess. (1983). Section 25(a)(1) of S. 668 provides, in language identical to that of the Sentencing Reform Act of 1984 as enacted in the CCCA (except for use of "title" instead of "chapter"), "This title shall take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment." Section 25(b)(3) of S. 668 is identical to the language of subsection 235(b)(3) of the Sentencing Reform Act of 1984 as enacted in the CCCA. Thus, when S. 668 uses the phrase "five years after the effective date of this Act," it is plainly referring to the end of a time period that would begin approximately two years after the date of enactment.

The same intention is evident in the structure of S. 1630 in the 97th Congress. That bill included the provisions that became the Sentencing Reform Act along with a comprehensive revision of the Criminal Code but without many of the components that eventually were included in the CCCA. S. 1630, 97th Cong., 1st Sess. (1981). The preamble of S. 1630 recited that it may be known as the "Criminal Code Reform Act of 1981." Subsection 134(a)(1) contains the same language as subsection 235(a)(1) of the CCCA, except that the effective date of "this Act" is postponed until thirty months after enactment. Subsection 134(b)(3) is identical to the language of subsection 235(b)(3) of the CCCA. Again, the five-year transition period would begin long after the date of enactment. There is nothing in the legisla-

---

7. In setting out this same passage from the Senate Report, the District Judge inserted "[CCCA]" after the phrase "this title," expressing his view that "title" referred to the Crime Control Act as a whole. That view was presumably based on the fact that the Crime Control Act, as we have noted, was enacted as Title II of H.R.J. Res. 648. But it is clear that the drafters of the Senate Report could not have been referring to the Crime Control Act as a whole when they said "this title." At the time the Senate Report was drafted, they could not possibly have foreseen that more than one year later the Crime Control Act would become Title II of a Joint Resolution dealing with continuing appropriations. By the phrase "this title" the drafters of the Senate Report were plainly referring to the group of provisions that ultimately became the Sentencing Reform Act because these provisions were packaged as Title II of S. 1762, 98th Cong., 1st Sess., a bill then known as the "Comprehensive Crime Control Act of 1983." This was the bill the Senate Report accompanied.

tive history of the CCCA to indicate that, when Congress placed the language of S. 668 and S. 1630 into the CCCA, it intended to change the structure of these prior bills and start the five-year transition period running from the date of enactment of the CCCA two (and now three) years before the new sentencing system goes into effect. Moreover, the intent to start the transition period on the date the sentencing guidelines go into effect was explicitly expressed by the Senate Committee on the Judiciary in its report on the Criminal Code Reform Act of 1979, which contained language virtually identical to the effective date and transition provisions of the Sentencing Reform Act of 1984. *See* S.Rep. No. 553, 96th Cong., 2d Sess. 927 n. 59 (1980).

■ Though we agree with the Government that the five-year transition period begins on November 1, 1987, we do not accept the Government's related argument that subsection 235(b)(3) of the CCCA does not become effective until that date. The Government contends that subsection 235(a)(1) postpones the effective date of the Sentencing Reform Act until November 1, 1987, with certain exceptions, and that subsection 235(b)(3), being part of the Sentencing Reform Act, therefore has the same effective date as the entire Act. We disagree with this fragmented reading of the effective date provision. Section 235 specifies the times when the various provisions of the Sentencing Reform Act become effective and includes various provisions to coordinate the implementation of the new sentencing system. Unless a contrary intention clearly appears, an effective date provision becomes effective on the date of enactment. It would be highly anomalous for portions of a section creating the timetable for a statute to have their own effective dates delayed. As appellant points out, if the subsections of subsection 235(b) did not become effective until November 1, 1987, the Chairman of the Parole Commission, who becomes an ex officio member of the Sentencing Commission by virtue of

subsection 235(b)(5), could not join the Sentencing Commission until November 1, 1987, almost six months after the Commission must submit its guidelines to Congress.

Our view of the statutory scheme is consistent with relevant appellate decisions. In *Walberg v. United States*, 763 F.2d 143, 148 (2d Cir.1985), we construed the five-year period specified in subsection 235(b)(4), concerning certain paroled prisoners, to run from November 1, 1986, to October 30, 1991. *Walberg* was decided before Congress postponed the effective date of the Sentencing Reform Act until November 1, 1987. Moreover, we treated subsection 235(b)(4) as in effect upon enactment of the CCCA. In *Chatman-Bey v. Meese*, 797 F.2d 987, 995 n. 11 (D.C.Cir. 1986), the District of Columbia Circuit viewed the five-year transition period as ending on November 1, 1991, for purposes of marking the abolition of the Parole Commission and requiring the Commission to comply with subsection 235(b)(3) "in advance of that date." [8]

■ With the statutory framework thus understood, the remaining issues on this appeal are relatively straightforward. Appellant contends that subsection 235(b)(3) requires the Parole Commission now to set a parole release for him within his applicable parole guideline. We agree with the District Court that subsection 235(b)(3) imposes no obligation upon the Parole Commission at this time. Though the subsection is now in effect, its command is only to set a release date for those to whom the subsection applies "early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission Procedures, before the expiration of five years following the effective date of this Act." Since that five-year period does not end until November 1, 1992, subsection 235(b)(3) requires nothing of the Commission at this time. The subsection is a "winding-up" provision that will provide

---

8. Though *Chatman-Bey* was decided after Congress postponed the start of the five-year transition period to November 1, 1987, *see* 797 F.2d at

995 n. 11, the District of Columbia Circuit, perhaps inadvertently, placed the end of the five-period in 1991 instead of 1992.

the certainty of release within the appropriate guideline range to those for whom the Parole Commission, prior to its abolition, might otherwise have either taken no action or set a parole date beyond their guideline ranges. The Senate Committee on the Judicary, in its report on the Criminal Code Reform Act of 1979, which contains transition provisions virtually identical to those of the Sentencing Reform Act of 1984, states, "At the *end* of [the five-year transition] period the Parole Commission will set final release dates for all prisoners still in its jurisdiction." S.Rep. No. 553, 96th Cong., 2d Sess. 927 n. 59 (1980) (emphasis added). Moreover, construing subsection 235(b)(3) to require the Commission now to parole all prisoners incarcerated beyond their applicable parole guideline ranges would effect an implied repeal of 18 U.S.C. § 4206(c) (1982), which explicitly authorizes the Commission to deny parole to those who have served time beyond their applicable guideline ranges. Repeals by implication are not favored. *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974).

■ Romano cannot now benefit from subsection 235(b)(3) for an additional reason. That subsection applies to "an individual who will be in [the Parole Commission's] jurisdiction the day before the expiration of five years after the effective date of this Act." As the District Court noted, Romano is currently scheduled for mandatory release on November 27, 1988, absent forfeiture of good-time credits. Unless he should hereafter lose his good-time credits, he will thus be released from prison prior to the time when the Parole Commission is obliged to set a parole release date for him within his guideline range.[9] Therefore, on the facts that currently exist, subsection 235(b)(3) will not be applicable to Romano

at the time that this subsection requires action by the Parole Commission because Romano will not then be in prison and hence not within the Commission's "jurisdiction" for purposes of subsection 235(b)(3).

Romano reads subsection 235(b)(3) quite differently. First, he contends that it applies not only to those *in prison* the day before the end of the five-year transition period (which Romano believes expires on October 12, 1989) but also to those *on parole* the day before the end of the five-year period. In his view, "jurisdiction" has the same meaning in subsection 235(b)(3) as in 18 U.S.C. § 4210(b) (1982), which provides that the "jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced," subject to specified exceptions. Romano contends that he will be within the "jurisdiction" of the Commission until 1993, twelve years after the start of his twelve-year sentence, and will therefore be within the "jurisdiction" of the Commission for purposes of subsection 235(b)(3) on the day before the end of the transition period, even if that period ends, as we hold, on November 1, 1992.[10] We disagree.

As Justice Frankfurter once observed, the term " 'jurisdiction' " is "a verbal coat of too many colors." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (dissenting opinion). Its meaning varies with its context, and it is evident that Congress intended different meanings when it used the term in 18 U.S.C. § 4210(b) and in subsection 235(b)(3) of the Sentencing Reform Act. The usage in section 4210 refers explicitly to the power of the Parole Commission "over the parolee." That section

9. This was true under the District Court's view that subsection 235(b)(3) required the Parole Commission to act somewhat in advance of October 12, 1989. It is even more clear under our view that the five-year transition period does not end until November 1, 1992.

10. If Romano does not forfeit his good-time credits, he will be on parole and under the supervisory jurisdiction of the Commission on October 30, 1992. A prisoner who has served

his sentence less good-time credits "shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days." 18 U.S.C. § 4164 (1982). That point will be reached by Romano sometime in April 1993. He has a twelve-year sentence and has been in custody since his arrest in October 1981.

assures that the Commission will retain power to supervise a parolee and to revoke his parole for violation of the conditions of parole. Subsection 235(b)(3) serves the entirely different purpose of requiring the Commission to set a parole release date for a specified category of individuals. Obviously, the task of setting a parole release date has no application to those already on parole, though still under the Commission's supervisory jurisdiction. Subsection 235(b)(3) concerns those within the jurisdiction of the Commission in the sense of remaining in prison. Romano recognizes that subsection 235(b)(3) must be applied to those still in prison. His point is that, since he will be within the Commission's supervisory jurisdiction through 1993, and, more pertinently, on the day before the end of the transition period, he should benefit from the subsection now, while he is still incarcerated.

The premise of Romano's argument is that Congress was so dissatisfied with the practice of the Parole Commission of setting release dates for some prisoners beyond their applicable guideline ranges that it enacted subsection 235(b)(3) to stop that practice and to require the Commission to set release dates within the applicable guideline range for a large group of prisoners—all those whose maximum sentences continue beyond the day before the transition period ends and the Commission is abolished. Though Congress expressed dissatisfaction with the Commission's use of its parole guideline system, *see* Senate Report at 53–56, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3236–39, its

remedy was to replace the parole system with the new system of determinate sentencing without parole, not to require a large number of prisoners sentenced under the current system to be released within their applicable parole guideline ranges. Subsection 235(b)(3) is obviously designed to deal with a very specific problem—the need to be sure a parole date is established for all those who will still be in prison the day before the Parole Commission ceases to exist. For that limited group, Congress chose not to require service of their maximum sentences but instead to afford them release on parole within their applicable parole guideline ranges. In all likelihood there will be a relatively small number of prisoners sentenced under the current system and still in custody on October 30, 1992, the day before the end of the transition period. Only that group, of which Romano is not now likely to be a member, will benefit from subsection 235(b)(3).[11]

■ Finally, Romano contends that if subsection 235(b)(3) does not apply to prisoners in his circumstances, it creates a distinction among prisoners that violates the equal protection component of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The distinction, as framed by Romano, is between two classes of prisoners, all of whom are sentenced under the current system: "prisoners (such as appellant) who have exceeded their release guidelines prior to [the end of the transition period] but must nevertheless remain

---

11. In rare instances application of subsection 235(b)(3) will seem somewhat anomalous. A few prisoners sentenced under the current system might still be in prison and be beyond their applicable guideline ranges on the day before the end of the transition period. Under subsection 235(b)(3), the Parole Commission will be required to set a parole release date "within" their applicable parole ranges. That will not be technically possible; the Commission, sometime prior to the end of the transition period, will simply have to order immediate release. However, that anomaly is not a reason for construing the subsection as Romano does. Even if the subsection were broadly applicable to all those whose sentences will not have expired the day before the end of the transition period, includ-

ing those then on parole, and even if the Commission were required to act with respect to such prisoners now, it would be obliged to set release dates "within" the guidelines for some prisoners already confined beyond their applicable guideline ranges. Indeed, under Romano's view of subsection 235(b)(3), the anomaly of setting a release date "within" a guideline for prisoners already confined beyond their guidelines would occur with some frequency. Under our construction, the anomaly will occur rarely, if at all; most, if not all, prisoners sentenced under the current system and not paroled or released prior to October 30, 1992, will be subject to a parole guideline that extends beyond that date.

incarcerated, and prisoners who receive the full benefits of [subsection 235(b)(3)] because their guidelines do not expire until some later date." Brief for Appellant at 17 (footnote omitted). Prisoners in the first class derive no benefit from subsection 235(b)(3) because they will be released (by parole on a date beyond their guideline ranges or after serving their maximum terms) earlier than the day before the end of the transition period. Romano's second class, we note, is not composed of all those who benefit from subsection 235(b)(3). Those who benefit from subsection 235(b)(3) are not only prisoners whose guideline ranges extend beyond the end of the transition period; every prisoner in custody the day before the end of the transition period benefits from subsection 235(b)(3), including some whose guideline ranges expire before the end of the transition period but whom the Parole Commission has chosen to keep in custody beyond the day before the end of the transition period. Nevertheless, we will assume that Romano, in advancing his equal protection claim, is entitled to compare his category of prisoners to the subclass of prisoners who benefit from subsection 235(b)(3) "because" their parole guideline ranges extend beyond the end of the transition period.

Romano's equal protection challenge is without merit. Legislative distinctions affecting the portions of sentences that must be served in prison satisfy equal protection standards when they are rationally related to legitimate state purposes. *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973) (good-time credits affecting parole eligibility); *Frazier v. Manson*, 703 F.2d 30, 33–34 (2d Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983) (good-time credits affecting maximum term of sentence). The evident purpose of subsection 235(b)(3) is to ensure that the Parole Commission will have set a parole date for every prisoner still in prison the day before the Commission ceases to exist. That is plainly a legitimate purpose, and subsection 235(b)(3) precisely achieves it. Having decided to require parole for all prisoners within the scope of subsection 235(b)(3), Congress

then chose to have the Parole Commission set their parole release dates within their parole guideline ranges. That too was a rational decision. Rather than let the Parole Commission exercise broad discretion in predicting what parole release date would be appropriate for prisoners still in prison after the Commission ceases to exist, Congress preferred to limit the Commission's discretion to a choice of release dates within a prisoner's applicable guideline range. It was surely rational for Congress to insist that the objective standards of the parole guidelines be applied to parole decisions that would inevitably have to be made considerably in advance of parole release. For those outside the scope of subsection 235(b)(3), Congress was not required to mandate any parole, much less parole within their applicable guideline ranges.

### Conclusion

We hold that subsection 235(b)(3) of the Crime Control Act is now in effect, that it requires the Parole Commission to set parole release dates within applicable guideline ranges only for prisoners who will be in prison on October 30, 1992, the day before the end of the five-year transition period, that it requires no action by the Commission until a time sufficiently in advance of November 1, 1992, to afford prisoners an opportunity to pursue administrative remedies before November 1, 1992, and that, thus construed, the subsection does not violate equal protection requirements.

The judgment of the District Court is affirmed.