**MADONNA, Matthew, Appellant,**

v.

**U.S. PAROLE COMMISSION, Appellee.**

No. 89–5844.

United States Court of Appeals, Third Circuit.

Argued March 15, 1990.

Decided April 13, 1990.

Judd Burstein (argued), Wendy A. Rothstein, New York City, for appellant.

James J. West, U.S. Atty., William A. Behe, Bruce Brandler (argued), Asst. U.S. Attys., Harrisburg, Pa., for appellee.

Linda S. Sheffield, Atlanta, Ga., amicus curiae for The Nat. Ass'n of Crim. Defense Lawyers, Inc.

Before SLOVITER, BECKER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

On December 10, 1987, appellant Matthew Madonna, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, received a parole hearing from the U.S. Parole Commission and was denied release.[1] According to Madonna, this denial constituted a departure from the Parole Commission guidelines applicable to him. Such a departure—assuming that there was a departure—would arguably be impermissible under the unamended version of section 235(b)(3) of the Sentencing Reform Act of 1984 (SRA).[2] However, it would be permissible under section 235(b)(3) as amended by section 2(b)(2) of the Sentencing Act of 1987,[3] which became law on December 7, 1987, well after Madonna had been sentenced but three days before his parole hearing. Arguing that the unamended version of section 235(b)(3) applies to him, Madonna brought a habeas

corpus action in the district court for the Middle District of Pennsylvania, *see* 28 U.S.C. § 2241, seeking release from custody. The district court referred the case to a magistrate, who concluded that the amended version applied. The district court agreed and therefore denied the writ. Madonna appealed.

As framed by Madonna, the principal issues on appeal are whether Congress intended the amended version of section 235(b)(3) to apply to him and, if so, whether that application violates either the Ex Post Facto or the Due Process Clauses of the United States Constitution. We find it unnecessary to address these questions, however. Because we conclude that the parole guidelines applicable to Madonna contained no upper limit, we agree with the Commission that no upward departure from the guidelines has occurred—or could occur—in this case.

In 1976, Madonna received a thirty-year sentence for possessing with intent to distribute over 20 kilograms of heroin. The parties agree that under the Parole Commission guidelines, this conduct qualified as a Category Eight offense, the highest offense category that those guidelines employ. *See* 28 C.F.R. § 2.20, at 92 (1989).

1. Madonna's offenses occurred in 1976, well before the enactment of the Sentencing Reform Act of 1984 (SRA), Pub.L. No. 98–473, 98 Stat. 1987 (1984). The SRA abolished parole altogether, *see* SRA § 218(a)(5), 98 Stat. at 2027, but only for offenses committed after November 1, 1987, the effective date of most of the SRA. *See* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728, 1728 (1985) (amending SRA § 235(a)(1), 98 Stat. at 2031, so as to provide for a November 1, 1987 effective date); Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266, 1266 (1987) (amending SRA § 235(a)(1) to make clear that the SRA does not apply to offenses committed before the effective date). The SRA thus retained the Parole Commission, but only until November 1, 1992 and only to administer the sentences of offenders whose crimes, like Madonna's, occurred before November 1, 1987. *See* SRA § 235(b)(1)(A), 98 Stat. at 2032.

2. Section 235(b)(3), as originally enacted, provided:

> The ... Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before [November 1,

1992], *that is within the range that applies to the prisoner under the applicable parole guideline.* A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before [November 1, 1992].

98 Stat. at 2032 (emphasis added). Madonna's court-imposed sentence is scheduled to run well beyond November 1, 1992.

3. Pub.L. No. 100–182, § 2(b)(2), 101 Stat. 1266, 1266 (1987). Before enactment of the SRA, the Parole Commission was authorized to depart from its guidelines in individual cases "if it determine[d] there [was] good cause for so doing." 18 U.S.C. § 4206(c) (1982). Section 2(b)(2) of the Sentencing Act restored the Commission's departure power with regard to prisoners covered by section 235(b)(3) of the SRA. Section 2(b)(2) provides:

> Section 235(b)(3) of the [SRA] is amended by striking out "that is within the range that applies to the prisoner under the applicable parole guideline" and inserting in lieu thereof "pursuant to section 4206 of title 18, United States Code".

Thus, even assuming that Madonna had earned the most favorable "Very Good" parole prognosis, which the Commission does not contest, the guidelines prescribe a release date after "100+" months of incarceration. *See id.*[4] On its face, this guideline range contains no upper limit, in distinct contrast to ranges applicable to less serious offenses, which are either bounded from above and below[5] or bounded only from above.[6]

Despite the apparently plain meaning of the Category Eight guideline ranges, Madonna contends that they have an implied upper limit of 48 months above their lower limit, which would fix Madonna's particular guideline range at between 100 and 148 months. To infer such a limit, Madonna relies solely on the Parole Commission's practice of providing a statement of reasons whenever a Category Eight offender is denied release for more than 48 months after the earliest release date within his guideline range. The guidelines themselves, however, explain this practice and foreclose Madonna's interpretation of it. A footnote referenced to the Category Eight guidelines explains:

> Note: For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category. For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching its decision, which may include the absence of any factors mitigating the offense. This procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a

grant of parole is to be presumed for every class of Category Eight offenders. *Id.*

The case law confirms that the guidelines mean what they say in this regard. Thus, in *Kele v. United States Parole Commission*, 775 F.2d 243 (8th Cir.1985), the Eighth Circuit held that a guideline range of "52 plus months" applicable to certain inmates who had committed "Greatest II" offenses[7] contained "no upper limit." *Id.* at 245. Moreover, the Sixth Circuit has stated that the guidelines applicable to Category Eight offenses have "no upper limit." *Hackett v. United States Parole Commission*, 851 F.2d 127, 129, 132 (6th Cir.1987) (per curiam). Madonna fails to cite—and we have been unable to find—any authority to the contrary.

We see no reason to reject these decisions and to disregard the plain meaning of the Category Eight guideline ranges. Madonna has advanced no argument that the Commission exceeded its delegated authority to promulgate release guidelines, *see* 18 U.S.C. § 4203(a)(1) (1982), by providing that the ranges applicable to those who commit the most serious offenses should be unbounded from above. We conclude, therefore, that because Madonna was correctly classified as having committed a Category Eight offense, the guideline range applicable to him contains no upper limit.

To summarize, Madonna's argument to this court is that no upward departure is permitted because the amendment made by section 2(b)(2) of the Sentencing Act of 1987, which would permit departure, is inapplicable. However, even assuming *arguendo* that no upward departure were permitted, no upward departure has oc-

---

4. By contrast, Madonna would have faced a guideline range of "120+" months had his parole prognosis been "Good"; a guideline range of "150+" months had his prognosis been "Fair"; and a guideline range of "180+" months had his prognosis been "Poor." *See* 28 C.F.R. § 2.20, at 92 (1989).

5. For example, an offender with a "Very Good" prognosis who has committed a Category 7 of-

fense faces a guideline range of "52–80" months of incarceration. *See id.*

6. For example, an offender with a "Very Good" prognosis who has committed a Category 1 offense faces a guideline range of "< = 4" months of incarceration. *See id.*

7. The Greatest II category encompassed offenses currently classified as either Category 7 or Category 8. *See, e.g.,* 28 C.F.R. § 2.20, at 90 (1985).

curred. The order of the district court denying the writ will be affirmed.