

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-2002

# Lyons v. Mendez

Precedential or Non-Precedential: Precedential

Docket No. 00-2822

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Lyons v. Mendez" (2002). *2002 Decisions.* Paper 559.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/559

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 9, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2822

JAMES LYONS,

Appellant

v.

JAKE MENDEZ, Warden; US PAROLE COMMISSION

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civ. No. 98-CV-01828)
District Judge: Honorable Thomas I. Vanaskie

Submitted Under Third Circuit LAR 34.1(a)
March 12, 2002

Before: ALITO, ROTH AND FUENTES, Circuit Judge s.

(Filed: September 9, 2002)

James Lyons, Pro Se
Reg. No. 02810-070
P.O. 2000 Unit 3B
White Deer, PA 17887


Martin C. Carlson
United States Attorney
Mary Catherine Frye
Assistant U.S. Attorney
Federal Building
228 Walnut Street
Harrisburg, PA 17108

Counsel for Appellee

OPINION OF THE COURT

PER CURIAM:

James Lyons appeals pro se from the District Court order
denying his petition for a writ of habeas corpus. He claims
that the Parole Commission improperly postponed his
release date beyond the guideline range by relying on a
1987 amendment to the Sentencing Reform Act ("SRA") that
authorized upward departures but that such departures
were not authorized when Lyons committed his crimes in

1986. Lyons argues that this 1987 amendment operates as an ex post facto law and is therefore unconstitutional as applied to him. We agree with Lyons's ex post facto argument and therefore reverse.

I.

Lyons committed narcotics-trafficking and related firearm offenses in 1986. Soon thereafter, he was convicted and sentenced to an aggregate prison term of 40 years. In 1996, after serving more than ten years of his sentence, Lyons had an initial parole hearing. The Parole Commission determined that under the applicable guideline, Lyons would normally be eligible for parole after serving 100-148 months, i.e., no later than August 1998. However, the Commission determined that a parole eligibility date outside the guideline range was warranted because of Lyons's "history of possessing/using weapons and violence." (Exhibit 4 to the Response to Show Cause Order, filed in the District Court at Dkt. #18). In postponing Lyons's eligibility date, the Commission apparently relied on 18

U.S.C. S 4206(c), which authorized the Commission to set release dates outside the guideline range for "good cause." Finding good cause, the Commission continued Lyons's incarceration until a mandatory release date in July 2009, more than ten years beyond the maximum term in his parole guideline range. The Commission reaffirmed its decision after a hearing in 1998.

In 1998, after serving 151 months of his prison term, Lyons filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. S 2241. He raised two challenges to the departure from his guideline range pursuant to the 1987 amendment: first, that application of this amendment violated the constitutional prohibition against ex post facto laws and, second, that it exceeded Congress's authority under the separation-of-powers doctrine. The District Court rejected both his ex post facto and separation-of-powers arguments. It accordingly denied Lyons's petition for habeas relief. This appeal followed.

II.

Lyons bases his claim to habeas relief primarily on the ex post facto clause of the United States Constitution.1 See U.S. Const. Art. 1, S 9 ("No . . . ex post facto Law shall be passed."). This clause forbids Congress from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes

_____

1. Lyons also invokes the separation-of-powers doctrine as an alternative basis for habeas relief. He argues that the 1987 amendment to S 235(b)(3) violates this doctrine because Congress lacks the authority to overrule two judicial decisions which Lyons believe support his claim, Romano v. Luther, 816 F.2d 832 (2d Cir. 1987), and Paris v. Whalen, 666

F. Supp. 715 (M.D. Pa. 1987).

Regardless of whether those two decisions are helpful to Lyons, his understanding and application of that doctrine are incorrect. The separation of powers doctrine provides, among other things, that Congress may not require federal courts to nullify or vacate their properly rendered final judgments. See Plaut v. Spendthrift Farms, Inc., 514 U.S. 211, 219 (1995). Congress's amendment toS 235(b)(3) makes no such threat to final judgements. Lyons's alleged separation-of-powers basis for habeas relief has no foundation in the facts of this case.

3

additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (emphasis added). The test for finding a criminal law to be ex post facto contains two elements.2 First, the law must be retrospective, applying to events prior to its enactment; and second, it must disadvantage the offender affected by it. See id. at 29.

As to the first element, the 1987 amendment to S 235(b)(3) is clearly retrospective. The parole transition sections to which S 235(b)(3) belongs apply to offenses committed before the SRA's effective date. See Tripati v. U.S. Parole Commission, 872 F.2d 328, 330 (9th Cir. 1988) (1987 amendment is retrospective); Lightsey v. Kastner, 846 F.2d 329, 333 (5th Cir. 1988) (same). The second element -- whether Lyons was disadvantaged by the 1987 amendment -- depends upon a determination of the law in effect in 1986, when Lyons committed his crimes. The original S 235(b)(3) required that parole release dates be set within the guideline range,3 whereas

_____

2. Of course, to pursue an ex post facto challenge, Lyons must also show that S 235(b)(3) applied to him, i.e. that he was in the Parole Commission's jurisdiction the day before the expiration of the five-year period referred to in S 235(b)(3). See supra, note 3. Courts have consistently held that the start date of the five-year period referred to in S 235(b)(3) was November 1, 1987. See Lightsey v. Kastner, 846 F.2d 329, 331-32 (5th Cir. 1988); Romano, 816 F.3d at 837; Tripati v. U.S. Parole Commission, 872 F.2d 328, 330 (9th Cir. 1988) (Section 235(b)(3) does not apply to prisoner who will be out on parole before November 1, 1992).

Because Lyons had not been released on parole, we find that he was clearly still in the Parole Commission's jurisdiction when the five-year period ended on the day before November 1, 1992.

3. Section 235(b)(3), as originally enacted in 1984 as part of the SRA, provided:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this

                    Act.

Pub. L. 98-473, 98 Stat. 2032 (1984) (prior to 1987 amendment)
(emphasis added).

                                        4


both before4 and after5  this original provision was in effect,
the Commission was authorized to set dates outside of the
guideline range. This determination, in turn, depends upon
the answer to the following deceptively simple question: on
what date did the SRA's original S 235(b)(3) take effect?

Lyons argues that the original S 235(b)(3) took effect upon
enactment in 1984. The government argues that it did not
take effect until November 1, 1987. If, as Lyons argues, the
law in effect in 1986 was the original S 235(b)(3), requiring
dates within the guideline range, then Lyons was clearly
disadvantaged when the Commission relied on the 1987
amendment to postpone his release over ten years beyond
the guideline's maximum of 148 months. But if, as the
government argues, the original S 235(b)(3) was not yet in
effect when Lyons committed his crimes, then the
Commission was still authorized to go outside the range.
Thus, when the 1987 amendment simply restored that
authority, Lyons's punishment was no greater than when
he committed his crimes, and therefore he was not
"disadvantaged."

We agree with Lyons that the original S 235(b)(3) took
effect upon enactment and thus the 1987 amendment
operated as an ex post facto law when it was applied to
postpone his release date beyond his maximum guideline
range of 148 months. We therefore find the amended
S 235(b)(3) unconstitutional as applied to Lyons.

A.

Our analysis of the effective date begins with the text of
the statute. The Sentencing Reform Act ("SRA") was enacted

_____

4. Before enactment of the SRA, the Parole Commission was permitted to
go beyond the guideline range in those cases with"good cause for so
doing." 18 U.S.C. S 4206(c) (1982).

5. The amended version of S 235(b)(3), enacted on December 7, 1987,
instructed the Commission to set a release date"pursuant to Section
4206 of Title 18 United States Code," and deleted the words, "that is
within the range that applies to the prisoner under the applicable parole
guideline." See Sentencing Act of 1987,S 2, Pub. L. 100-182, 101 Stat.
1266 (1987). Once again, upward departures from the guideline range
were authorized for "good cause." 18 U.S.C.S 4206.

                                        5


as Chapter II of the multi-faceted Comprehensive Crime
Control Act ("CCCA"). See Pub. L. 98-473, 98 Stat. 1837,

1987 (1984). The SRA's purpose was to replace "a system of indeterminate sentences and the possibility of parole with determinate sentencing and no parole." Walden v. U.S. Parole Commission, 114 F.3d 1136, 1138 (11th Cir. 1997). Because the CCCA contained no effective-date provision governing the entire statute, the CCCA itself became effective upon enactment on October 12, 1984. See United States v. Shaffer, 789 F.2d 682, 686-87 (9th Cir. 1986). Section 235 of the CCCA, located within the SRA chapter, bore the title "Effective Date." It provided a uniform effective date for most provisions of the SRA, specified certain exceptions to that uniform date, and contained special provisions concerning the transition to the new sentencing system. See Romano v. Luther, 816 F.3d 832, 835 (2d Cir. 1987). Under S 235(a)(1), this uniform effective date was governed by a time-delay mechanism, triggered by the CCCA's date of enactment. See Pub. L. No. 99-217, S 4, 99 Stat. 1728 (1985) (amending the mechanism from a 24-month delay to a 36-month delay). In short, because the CCCA was enacted on October 12, 1984, at least most of the SRA became effective on November 1, 1987. Unfortunately, S 235 made no mention of the effective date of that entire section or of its subsection 5(b)(3).

B.

With this framework in mind, we turn to the interpretations of the courts. In this circuit, the contention that S 235(b)(3) took effect upon enactment of the SRA is a matter of first impression.[6] We have not yet faced a petitioner like Lyons: his release date hinges on our determination of when S 235(b)(3) went into effect, because he committed his crimes after the provision's enactment in

_____

6. In Madonna v. U.S. Parole Commission, 900 F.2d 24 (3d Cir. 1990), the petitioner challenged the amended version of S 235(b)(3) under the ex post facto and due process clauses. However, this Court found it "unnecessary to address these questions" because the Commission had not departed from the guideline range. Id. at 25. Furthermore, unlike Lyons, Madonna committed his crime before the SRA was enacted.

6

1984 but before its amendment in 1987, and he was still in the Commission's jurisdiction when the statute's five-year transition period ended. The petitioner in United States ex rel. D'Agostino v. Keohane, 877 F.2d 1167 (3d Cir. 1989), claimed the benefit of the original S 235(b)(3); but unlike Lyons, D'Agostino committed his crimes in the 1970's, long before the SRA was even enacted, so our holding against D'Agostino could not have implicated the issue before us, i.e., whether S 235(b)(3) took effect in 1984 or 1987.

We acknowledge that in United States v. Martinez-Zayas, 857 F.2d 122 (3d Cir. 1988), in discussing whether we had appellate jurisdiction under 18 U.S.C. S 3742 (1986 Supp.), we stated that "Congress determined that S 3742 and the other provisions in its new sentencing law would be effective

November 1, 1987." Id. at 126 (emphasis added). We do not construe this statement as binding upon our inquiry into the effective date of S 235(b)(3). As we noted above, most of the SRA provisions took effect on November 1, 1987, but S 235 contained explicit exceptions, so our phrase "and the other provisions" in Martinez-Zayas was both overbroad and dictum. The only SRA provision before us then wasS 3742 (conferring appellate jurisdiction over sentences imposed in violation of law) and its effective date. No other provisions of the SRA, including S 235(b)(3), related to that decision.

Similarly, in another indirectly related matter-- concerning the question whether the SRA also applies to offenses committed before its effective date-- we noted that Congress amended S 235(a)(1) of the SRA to clarify that the SRA applies "only to offenses committed after" November 1, 1987. Gallardo v. Quinlan, 874 F.2d 186, 188 (3d Cir. 1989). However, as the Seventh Circuit has noted, in making that clarification, Congress cannot have been referring to those parts of the SRA that concern parole transition because defendants committing offenses after November 1, 1987, were not subject to parole. See Norwood v. Brennan, 891 F.2d 179, 181 (7th Cir. 1989). If the parole transition provisions were applicable only to offenses committed after November 1, 1987, they would not apply to anyone. See id. Thus, our statement in Gallardo cannot be reasonably construed to encompass the parole transition provision before us in this case, S 235(b)(3).

7

C.

With no controlling precedent on point to guide us, we survey the decision of the other courts of appeals. Several of the courts of appeals have stated that S 235(b)(3) took effect on November 1, 1987. However, these statements were typically not grounded in analysis (referring instead to S 235(a), the SRA's general effective-date provision) and rarely central to the holding. See Evenstad v. United States, 978 F.2d 1154, 1158 (9th Cir. 1992); Coleman v. Honsted, 908 F.2d 906, 908 (11th Cir. 1990); Miller v. Story, 814 F.2d 320, 321 (6th Cir. 1987); Kimberlin v. Brewer, 825 F.2d 1157, 1158 (7th Cir. 1987). By contrast, the Second Circuit in Romano v. Luther, 816 F.3d 832 (2d Cir. 1987), engaged in analysis and concluded, albeit in dicta, that S 235(b)(3) took effect upon enactment in 1984.

We are aware of only two court of appeals cases, in the Ninth and Eleventh Circuits, in which the effective date of S 235(b)(3) was crucial to the holding.7 See Evenstad v.

_____

7. A number of cases have denied relief to petitioners seeking to challenge the timing of their release based on the 1987 amendment to S235(b)(3). However, with one exception, these petitioners are factually distinguishable from Lyons.

In some cases, the petitioner was sentenced before the SRA was

enacted. Thus, the petitioner was sentenced under 18 U.S.C. S 4206 that authorized the Commission to set release dates outside of the guideline range for good cause. The 1987 amendment to S 235(b)(3) merely restored that authority. Thus, those petitioners would not be disadvantaged by the amendment and could not satisfy the test for an ex post facto challenge. See Valladares v. Keohane, 871 F.2d 1560, 1563 (11th Cir. 1989); Norwood, 891 F.2d at 182; Kimberlin, 825 F.2d at 1158. By contrast, Lyons was sentenced after the SRA was enacted.

In other cases, the petitioner was scheduled to be released before the end of the five-year period specified in S 235(b)(3), and the provision did not apply on its face. Miller, 814 F.2d at 321. By contrast, Lyons was scheduled to (and did) remain in the jurisdiction of the Parole Commission at the expiration of the five-year period.

In still other cases, the petitioner was disqualified for relief for both of these reasons. See Tripati v. United States Parole Commission, 872 F.2d 328, 329 (9th Cir. 1988); Lightsey v. Kastner , 846 F.2d 329, 333-34 (5th Cir. 1988).

8

United States, 978 F.2d 1154 (9th Cir. 1991); Coleman v. Honsted, 908 F.2d 906 (11th Cir. 1990). The relevant chronological facts of those petitioners appear identical to our case.8 However, neither case involved an ex post facto challenge. Both circuits rejected the petitioners' argument that the original S 235(b)(3) should have applied to them. We find neither circuit's conclusion persuasive.

In Evenstad, the petitioner argued that his guilty plea was involuntary because he had relied on the parole provisions of the original S 235(b)(3), which was later amended to his disadvantage. The Court stated, without analysis, that S 235(b)(3) did not take effect until November 1, 1987, and therefore held that the petitioner could not have relied on that provision when pleading guilty in 1986. See Evenstad, 978 F.2d at 1158. The Ninth Circuit also stated that S 235(b)(3) is "a transition provision, which controls the timing of the Parole Commission's decisions, but does not change the parole eligibility of prisoners." Id. We disagree with this statement. Section 235(b)(3), as originally enacted, did affect parole eligibility for those prisoners to whom it applied, as it mandated a release date within, rather than beyond, the guideline range. If it had not affected the parole eligibility of that group, then it is difficult to conceive why Congress amended that provision in 1987 to restore the Commission's former authority to go beyond the guideline range.

_____

In one Ninth Circuit case, United States v. Silver, 83 F.3d 289 (9th Cir. 1996), the petitioner's chronological facts are similar to Lyons, i.e. he committed his crimes between 1984 and November 1, 1987 and was still in prison in 1992. The Court held that "the law that existed prior to the [SRA's] effective date [of November 1, 1987] applies to this case," but the issue in that case was 18 U.S.C. S 3564, not parole or S 235(b)(3).

8. Like Lyons, the petitioners in these two cases committed offenses after

the SRA was enacted but before S 235(b)(3) was amended in 1987. Although there is no discussion of the fact in either case, it appears that each petitioner would have been in the Parole Commission's jurisdiction at the end of the five-year period referred to inS 235(b)(3). See Evenstad, 978 F.2d at 1156 (offense and sentence in 1986; sentenced to twelve years); Coleman, 908 F.2d at 907 (arrested in 1986 and sentenced to 13 years prison).

In Coleman, the petitioner argued that a release date within the guideline range was mandated by S 235(b)(3). The Court stated that S 235(b)(3) was meant solely as a "winding up" provision and was not meant to change the manner in which the Commission determined eligibility dates. Coleman, 908 F.2d at 908. The Court stated that this view was supported by the fact that Congress amended the section to "clarify" its intent "thirty-six days after the Sentencing Reform Act had taken effect," i.e., in December of 1987. Id. We cannot read the December 1987 amendment as a "clarification." As originally enacted, S 235(b)(3) required a release date within the guideline range. We noted in D'Agostino that Congress realized that, as originally enacted, S 235(b)(3) provided"an unjustified windfall to some of the most dangerous prisoners" and that the 1987 amendment was enacted to return authority to the Commission to go beyond the guideline range where warranted. See D'Agostino, 877 F.2d at 1172, n.9 (quoting 132 Cong. Rec. S-7940 (April 17, 1986) (statements of Senator Thurmond)). While the decision to mandate release dates within the guideline range may not have been wise, it is the decision that Congress made in its original enactment.

We are persuaded by the reasoning of the Second Circuit in Romano that S 235 took effect upon enactment in 1984. See 816 F.2d at 839. That Court reasoned that"it would be highly anomalous for potions of a section creating the timetable for a statute to have their own effective dates delayed." Id. The Court observed that if another subsection of the same provision, S 235(b)(5), was construed as not taking effect until November 1, 1987, an absurd result would follow:

> the Chairman of the Parole Commission, who becomes an ex officio member of the Sentencing Commission by virtue of subsection 235(b)(5), could not join the Sentencing Commission until November 1, 1987, almost six months after the Commission must submit its guidelines to Congress.

Id. at 839.9 CertainlyS 235(b)(5), although located within

---

9. The Romano court nevertheless held that the petitioner was not eligible for relief under S 235(b)(3), because he would not be within the Commission's jurisdiction on November 1, 1992. See Romano, 816 F.2d at 840.

the SRA chapter and not explicitly excepted from the uniform Effective Date, must be construed as taking effect upon enactment.

We agree that, absent a clear contrary intention in the text, "an effective date provision becomes effective the date of enactment." Id. Seeing no clear contrary intention in the text, we hold that S 235(b)(3) took effect upon enactment on October 12, 1984. Therefore, this original provision-- requiring the Commission to stay within the guideline range -- was in effect when Lyons committed his crimes in 1986, and thus the retroactive application of the 1987 amendment to lengthen his punishment was unconstitutional under the ex post facto clause.

The District Court here, after noting that implicit repeals are disfavored, concluded that, under the reasoning in Romano, S 235(b)(3) would have implicitly repealed 18 U.S.C. S 4206(c). We think that adopting the conclusion in Romano would work no such repeal. The Supreme Court recently reiterated its rule that "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, __, 122 S. Ct. 593, 605 (2001) (citation omitted). Section 235(b)(3) applies to the small class of persons (of which Mr. Lyons is a member) who committed crimes between October 12, 1984 and December 7, 1987 and who were scheduled to be in the Parole Commission's jurisdiction on November 1, 1992. Even after S 235(b)(3) took effect, S 4206(c) still applied to two other classes of criminals: (1) those who committed their crimes before October 12, 1984 and (2) those who would no longer be in the Commission's jurisdiction on November 1, 1992. Thus, both statutes can coexist and therefore both should be regarded as effective.

The District Court found that the statutory framework and legislative history supported its conclusion that S 235(b)(3) did not take effect until November 1, 1987. It viewed it as a winding-up provision, intended to ensure that the Parole Commission take action regarding those inmates who were sentenced under pre-SRA law and would still be in prison after the Commission was phased out.

Because the Commission was to continue its business for five years after the SRA took effect, "there was no need for the S 235(b)(3) to go into effect before" the SRA's effective date. App. at 31 (District Court's Memorandum). The Senate Report did indicate an intent to distinguish between pre-SRA era and SRA-era offenses, to create a seamless phasing out of the Commission as the SRA took effect. The report stated that a "sentence imposed before the effective date of the [Sentencing] guidelines . . . would not be

affected by this title. As to an offense committed prior to the effective date, the preexisting law will apply as to all substantive matters including the imposable sentence." S. Rep. No. 98-225, reprinted at 1984 U.S.C.C.A.N. 3182, 3372 (1985).

It may be true that, considering the mechanics of the transition, "there was no need" for S 235(b)(3) to go into effect before the rest of the SRA. It is also possible that Congress wished to design a transition without the window of opportunity through which Lyons sees his freedom. However, the text of the statute is the best expression of the intent of Congress. Using standard tools of statutory interpretation, we have carefully considered both the text and context of S 235(b)(3) and conclude that it took effect upon enactment.

III.

We hold that S 235(b)(3) took effect on October 12, 1984, and, as originally enacted, applied to Lyons. Thus, he was a member of the class of individuals (who committed crimes between the enactment of the SRA in 1984 and the amendment of S 235(b)(3) in 1987) who are entitled to a parole release date within the guideline range. The application of the 1987 amendment to Lyons disadvantaged him because it permitted the Commission to set his release date beyond -- rather than within -- the guideline range. By imposing additional, retrospective punishment on Lyons, the amended S 235(b)(3) operated as an ex post facto law. It is unconstitutional as applied to Lyons.

We will therefore reverse the District Court's holding that S 235(b)(3) does not constitute an ex post facto violation

12

against Lyons. We remand so that the District Court may issue the writ of habeas corpus.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13