**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 1 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAYMOND L. BLEDSOE; BILLY E.
DACUS; MARSHALL E. WILLIAMS,

Petitioners-Appellants,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

No. 03-3224

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 01-CV-3168-RDR)**

Submitted on the briefs:

Charles M. Rogers, Jeremy S. Weis, and Rebecca M. Hain of Wyrsch Hobbs &
Mirakian, P.C., Kansas City, Missouri, for Petitioners-Appellants.

Eric F. Melgren, United States Attorney and Nancy Caplinger, Assistant United
States Attorney, District of Kansas, and Richard A. Friedman, Appellate Section,
Criminal Division, United States Department of Justice, Washington, D.C.,
for Respondents-Appellees.

Before **TACHA** , Chief Judge,   **MURPHY** , Circuit Judge, and   **CAUTHRON** ,[*]
Chief District Judge.

---

[*]     The Honorable Robin J. Cauthron, Chief District Judge, United States
District Court for the Western District of Oklahoma, sitting by designation.

**MURPHY** , Circuit Judge.

In this appeal we are asked to determine whether a 1987 amendment to the Sentencing Reform Act violated petitioners' rights to due process, or was otherwise an unlawful bill of attainder or *Ex Post Facto* law. Because we answer those questions in the negative, we affirm the decision of the district court.[**]

*Background and Procedural History*

Before November 1, 1987, The Parole Commission and Reorganization Act of 1976 (PCRA) governed the terms of federal sentences. Pub. L. No. 94-233, § 2, 90 Stat. 219 (codified as amended at 18 U.S.C. §§ 4201-4218 (1982) (repealed 1984, effective 1987)). The PCRA empowered the Parole Commission to evaluate prisoners' behavior and to award them early release on the basis of positive institutional adjustment. *See* 18 U.S.C. § 4206. Dissatisfied with this

---

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioners had requested oral argument both in their brief and in a separate motion, and respondent had noted that it was "not opposed" to argument being granted. But, because this case may be decided entirely on the briefs, we have determined that oral argument is not necessary.

system, Congress passed the Sentencing Reform Act of 1984 (SRA). The SRA became effective on November 1, 1987, when it repealed and replaced the PCRA. Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74, 3581-86, 28 U.S.C. §§ 991-98 (1988)). Under the SRA, parole was to be abolished, the Parole Commission was to be phased out, and prisoners were to serve uniform sentences under sentencing guidelines. *See id.*

The SRA originally provided that, before the end of its extinction after a five-year window, the Parole Commission was to reset the release dates of prisoners who were serving sentences imposed before the SRA's effective date to comport with the SRA's guidelines. Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, 2032 (1984), reprinted in 18 U.S.C. § 3551 note (1988). Section 235(b)(3) of the original SRA provided that:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

*Id.*[1]

---

[1] The five-year period after the effective date of the Act began to run on

(continued...)

In *Lewis v. Martin*, 880 F.2d 288, 290 (10th Cir. 1989), this court

characterized Section 235(b)(3) as

> a "winding-up" provision to ensure that the Parole
> Commission will set release dates for all prisoners
> sentenced under the old statutes before it goes out of
> business on November 1, 1992. *See id.* at 839-40. The
> subsection does not require the Commission to take
> immediate action on the release date of any prisoner.
> Rather, by its own terms, the subsection requires the
> Commission to set a release date for any prisoner within
> its jurisdiction sufficiently before November 1, 1992, to
> allow him time to appeal the decision.

*Id.* at 290. [2]

On December 7, 1987, thirty-six days after the SRA became effective,

Congress amended the Act to clarify that the terms of the PCRA would continue

to govern the sentences of those prisoners sentenced prior to the effective date of

the SRA, and extended the life of the Parole Commission to administer those

sentences. Sentencing Act of 1987, Pub. L. No. 100-182, § 2(b)(2), 101 Stat.

1266 (1987). As we explained in *Lewis v. Martin*,

---

[1](...continued)
November 1, 1987. *Lewis v. Martin*, 880 F.2d 288, 290 (10th Cir. 1989) (citing
*Lightsey v. Kastner*, 846 F.2d 329, 332 (5th Cir. 1988), and *Romano v. Luther*,
816 F.2d 832, 837-39 (2d Cir. 1987)).

[2]     Congress has repeatedly extended the life of the Parole Commission to
administer those prisoners with pre-SRA sentences. *See, e.g.*,
Pub. L. No. 101.650, Title III, § 316, 104 Stat. 5089, 5115 (extension for ten
years); Pub. L. No. 104-232, § 2(a), 110 Stat. 3055 (extension for fifteen years).
The life of the Commission has most recently been extended to October 31, 2005.
*See id.*

On December 7, 1987, section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates within the guideline range. *See* Sentencing Act of 1987, Pub. L. 100-182, § 2(b)(2), 101 Stat. 1266 (1987) (1987 amendment). The amended section 235(b)(3) requires the Commission to set release dates 'pursuant to section 4206 of Title 18 United States Code,' which permits release dates outside the guideline range.

880 F.2d at 290.

Petitioners, three federal prisoners who were sentenced for violent crimes prior to 1987, object to the application of this 1987 amendment. They brought petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2241 arguing that, during the thirty-six days in which the original Section 235(b)(3) was in effect, a liberty interest arose that guaranteed them the right to be resentenced under the new sentencing guidelines. Because they have not been resentenced, they argue that their due process rights have been abridged. They further maintain that the 1987 amendment to the SRA, which clarified Section 235(b)(3) of the Act, was unconstitutional as either a bill of attainder or an *Ex Post Facto* law.

The district court of Kansas referred petitioners' case to a magistrate judge. The magistrate judge evaluated petitioners' arguments under the Due Process, as well as under the bill of attainder and *Ex Post Facto* clauses, and she found petitioners' arguments to be without merit. She found that petitioners did not have a cause of action under due process because the Tenth Circuit had held in *Lewis*, 880 F.2d at 290, that certain prisoners in custody before the effective date

of the SRA had no statutory interest—and therefore no liberty interest—in being released within the SRA's guideline ranges. Aplt. App. at 0182-83. The magistrate judge determined that petitioners had not been subject to a bill of attainder because, by definition, a bill of attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Id.* at 0184 (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)). Congress's 1987 amendment to the SRA had not singled out any identifiable group of individuals, nor had it inflicted any punishment upon petitioners beyond maintaining their original sentences. *Id.* (citing *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997)). Finally, the magistrate judge found that petitioners had not been subject to punishment in violation of the *Ex Post Facto* clause. Citing *United States v. Gerber*, 24 F.3d 93, 96 (10th Cir. 1994), the magistrate judge reiterated that the *Ex Post Facto* clause is violated only when a law imposes a greater punishment on an individual who commits an offense than the punishment that was in existence when the person committed the offense. *Id.* at 0183. Because the law in existence when the petitioners committed their crimes before 1987 permitted sentences beyond the SRA's guideline ranges, the 1987 amendment that maintained the continuity of the law in place when they committed those crimes did not violate the *Ex Post Facto* clause. *See id.* The district court adopted the findings and conclusions of

-6-

the magistrate judge's report and recommendation, and it denied petitioners' applications for writs of habeas corpus.

*Discussion*

Because petitioners are federal prisoners, a certificate of appealability is not required to consider the district court's denial of a writ under 28 U.S.C. § 2241. *Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997). We review a district court's denial of a writ under 28 U.S.C. § 2241 de novo. *Hunnicutt v. Hawk*, 229 F.3d 997, 1000 (10th Cir. 2000).

We agree with the district court's decision, and we note that arguments similar to petitioners' have been found to be without merit by federal appellate courts across the country. Today we join those circuits in holding that Congress's 1987 amendment to the SRA did not deny prisoners such as petitioners, who committed crimes before the effective date of the SRA, due process; the amendment was not a bill of attainder; nor did enactment of the amendment violate the *Ex Post Facto* clause.

*Due Process*

Petitioners do not have a liberty interest in having their release dates recalculated under the SRA because the SRA, for the thirty-six days it remained in its original form, does not necessarily apply to them. *See Lewis*, 880 F.2d at 290-91 (holding that certain prisoners who were incarcerated before the effective date of the SRA and whose sentences exceeded their guideline range had no statutory interest, and therefore no liberty interest under due process, in having their sentences reformed under the SRA). Although our decision in *Lewis* concerned a prisoner who would be released before the Parole Commission was scheduled to expire in 1992, our reasoning in that case has broader application to prisoners scheduled for release after 1992. *Id.* at 291. We today confirm what has been assumed by the magistrate judge and the district court here that *Lewis* establishes that petitioners have no statutory interest—and therefore no vested liberty interest—in release under the SRA when there is no certainty that they may be in the custody of the Parole Commission when it expires.

In *Lewis*, we rejected a prisoner's argument that the original SRA had created a statutory right for all prisoners in custody before the Parole Commission's initial expiration date in 1992 to be resentenced under that statute's guidelines. We reasoned that: "If Lewis were correct, section 235(b)(3) [of the original SRA] would be transformed from a mere phase-out provision into a

-8-

sweeping decision to grant earlier release dates to large numbers of federal prisoners currently serving time beyond their guideline-recommended release dates." *Id.* at 290-91. We then quoted at length from the Second Circuit's decision in *Romano v. Luther*, 816 F.2d 832, 840-41 (2d Cir. 1987), which discussed the history and context of the SRA, and which confirmed that "[s]ubsection 235(b)(3) is obviously designed to deal with a very specific problem—the need to be sure a parole date is established for all those who will still be in prison the day before the Parole Commission ceases to exist," not the desire to release pre-1987 prisoners within SRA guidelines. *Id.* at 841.[3] Because the Parole Commission would still be in existence when Lewis was to be released

_____

[3]     As the *Romano* court elaborated,

> The premise of Romano's argument is that Congress was so dissatisfied with the practice of the Parole Commission of setting release dates for some prisoners beyond their applicable guideline ranges that it enacted subsection 235(b)(3) to stop that practice and to require the Commission to set release dates within the applicable guideline range for a large group of prisoners—all those whose maximum sentences continue beyond the day before the transition period ends and the Commission is abolished. Though Congress expressed dissatisfaction with the Commission's use of its parole guideline system, *see* Senate Report at 53-56, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3236-39, its remedy was to replace the parole system with the new system of determinate sentencing without parole, not to require a large number of prisoners sentenced under the current system to be released within their applicable parole guideline ranges.

*Id.* at 841.

in 1989, we held that the provisions of the SRA did not apply to him. *Lewis*, 880 F.2d at 291.

Extension of our rationale in *Lewis* establishes that petitioners in the instant case similarly have no statutory interest—and therefore no vested liberty interest—in the SRA despite the fact that they have release dates after 1992, and despite the fact that the life of the Commission has, as of most recently, been extended to October 31, 2005, *see* Pub. L. No. 107-273, § 11017(a), 116 Stat. 1758, 1824 (2002), when petitioners' release dates are in 2007, 2008, and 2009. Because the language of the original SRA provision required the Commission to set release dates only for prisoners "who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act" and the release dates were merely to be "set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act," the implication is that the statute was solely to affect prisoners who would be under the jurisdiction of the Parole Commission just before the Commission expired. Pub. L. No. 98-473, § 235(b)(3), 98 Stat. 1837, 2032 (1984); *accord Romano*, 816 F.2d at 841; *Lightsey v. Kastner*, 846 F.2d 329, 332 (5th Cir. 1988). But *Lewis* and the Second Circuit's decision in *Romano* both establish that being in the "jurisdiction" of the Parole Commission means that the prisoner remains in

-10-

the physical custody of the Parole Commission.    *Lewis* , 880 F.2d at 290-91;

*Romano* , 816 F.2d at 841;   *accord Valladares v. Keohane*   , 871 F.2d 1560, 1563

(11th Cir. 1989).  Hence, the statute controls only the sentences of that limited

group of prisoners who will actually be incarcerated the day before the

Commission does finally and ultimately expire.    [4]  *See Romano* , 816 F.2d at 841;

*accord United States ex rel. D'Agostino v. Keohane*     , 877 F.2d 1167, 1171 (3d Cir.

1989) (reiterating that the "Commission was directed to set a release date for

individuals sentenced under the old system who would still be incarcerated on the

date prior to the expiration of the Commission").  And every time Congress

extends the life of the Commission, the Commission need not set release dates

again within the guidelines until just before the Commission is to expire.    *See*

*Romano* , 816 F.2d at 839;   *accord, e.g.* , *Stange v. United States Parole Comm'n*   ,

875 F.2d 760, 762 (9th Cir. 1989).

Because we will not know if petitioners will be in the group that must

actually be resentenced under the guidelines on the day before the Commission

expires until after Congress actually permits the Parole Commission to expire, we

---

[4]     *See also  Romano* , 816 F.2d. at 841 n.11 (recognizing the anomaly that will
be present when the Commission must, at some future point, set release dates
within the guidelines for prisoners who have already served sentences beyond the
guidelines, but concluding that the number of prisoners that the anomaly will
affect will be small and that the anomaly "is not a reason for construing the
subsection as Romano does").

-11-

hold that petitioners do not now have a statutory interest, and therefore cannot have a liberty interest, in the language of the original SRA. *Lewis*, 880 F.2d at 290. And, because petitioners have not established that they will have a liberty interest in being resentenced under the SRA, we hold that petitioners have not established the violation of that interest as necessary to pursue a due process claim. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987) (noting that only when "statutes or regulatory provisions are phrased in mandatory terms or explicitly create a presumption of release [will] courts find a liberty interest" to support a due process claim). We thus affirm the district court's denial of petitioners' due process claim.

*Bill of Attainder and Ex Post Facto Clause* [5]

---

[5] In the unpublished case of *Gade v. United States Parole Comm'n*, 103 F.3d 144 (Table), No. 96-1341, 1996 WL 718127 (10th Cir. Dec. 13, 1996), we dismissed similar issues in a cursory fashion. We issue a published opinion today, but reach the same conclusion about the merits of these series of arguments. As we explained in *Gade*,

Mark Winslow Gade appeals the district court's order denying his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Gade argues that: (1) under the original version of § 235(b)(3) of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 235(b)(3), 98 Stat.2032 (1984) (codified as amended at 18 U.S.C. § 3551 (1985 & Supp.1996)), and its original regulatory interpretation at 28 C.F.R. 2.64 (1987), the Parole Commission is required to set Gade's release date within the guidelines of sixty to

(continued...)

-12-

We also agree that the petitioners have not been subject to a bill of attainder, and that the 1987 amendment does not violate the *Ex Post Facto* clause. *See generally* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or Ex Post Facto Law shall be passed.").

As the magistrate judge and district court appropriately noted, a bill of attainder "legislatively determines guilt and inflicts punishment upon an

---

[5](...continued)
> seventy-two months and because he has already served in excess of seventy-two months he is entitled to immediate release; (2) the amended versions of § 253(b)(3) and 28 C.F.R. 2.64, which expressly allow the Parole Commission to set release dates outside the guidelines, are Ex Post Facto laws; and (3) in any event, the Parole Commission was required to release him in February, 1994, because he had then served eighty months, a third of his twenty-year sentence. The magistrate judge concluded that Gade's arguments have no merit and recommended that the district court dismiss the petition. The district court adopted the magistrate's opinion and denied the petition.
>
> Gade's renewed arguments on appeal are simply variations on a theme that courts have been hearing from federal prisoners since the enactment of the original version of § 253(b)(3). This court and at least seven other circuits have rejected same or similar arguments. *See, e.g.*, *Lewis v. Martin*, 880 F.2d 288 (10th Cir. 1989); *Piekarski v. Bogan*, 912 F.2d 224 (8th Cir. 1990); *Skowronek v. Brennan*, 896 F.2d 264 (7th Cir. 1990); *Valladares v. Keohane*, 871 F.2d 1560 (11th Cir. 1989); *Tripati v. United States Parole Comm'n*, 872 F.2d 328 (9th Cir. 1989); *United States[, ex rel. D'Agostino] v. Keohane*, 877 F.2d 1167 (3d Cir. 1989); *Lightsey v. Kastner*, 846 F.2d 329 (5th Cir. 1988); *Romano v. Luther*, 816 F.2d 832 (2d Cir. 1987). In view of the settled law on this subject, Gade's contentions are frivolous.

*Gade*, 1996 WL 718127, at **1 (footnote omitted).

identifiable individual without provision of the protections of a judicial trial."

*Nixon*, 433 U.S. at 468. The language of the 1987 amendment merely amended the original SRA to delete the clause requiring the Commission to set release dates within the guideline range. *See* Sentencing Act of 1987, Pub. L. No. 100-182, § 2(b)(2), 101 Stat. 1266 (1987) (1987 amendment); *Lewis*, 880 F.2d at 290. Petitioners are members of an entire class of persons who might be affected. Indeed, our earlier discussion whether petitioners may be affected by the language of the original provision of the SRA at all highlights the ambiguity of the provision and how imprecisely it is targeted. Because petitioners have thus not been targeted as "identifiable individuals," we hold that the 1987 amendment was not a bill of attainder. *Nixon*, 433 U.S. at 468; *Dorlouis*, 107 F.3d at 257.

Finally, we join many federal courts of appeal in holding that the 1987 amendment as applied to prisoners who committed crimes prior to the Sentencing Reform Act's enactment does not violate the *Ex Post Facto* clause.[6] *See, e.g.*,

---

[6] The most succinct analysis on this issue is a recent unpublished decision from the Seventh Circuit, which disposes of the question in no more than a few lines:

Anthony Leisure is serving time for crimes committed before the Sentencing Reform Act of 1984. *See United States v. Leisure*, 844 F.2d 1347 (8th Cir. 1988). That statute called for all such persons to receive a determinate parole date, within the range determined by a set of guidelines, by 1992, when the Parole Commission would go out of existence. In 1987 Congress repealed this provision and

(continued...)

-14-

*Fassler v. United States Parole Comm'n*, 964 F.2d 877, 880 (9th Cir. 1991)

(holding that, because the SRA did not affect the prisoner's sentence, the 1987

amendment to the SRA could have no *Ex Post Facto* effect); *United States v.*

*McCall*, 915 F.2d 811, 816 (2d Cir. 1990) (holding that the SRA had no *Ex Post*

*Facto* effect on a prisoner who, *inter alia*, had committed his crimes before the

---

[6](...continued)

extended the Parole Commission's existence indefinitely. Leisure has been considered for parole twice since 1987. On each occasion the Commission decided that he should be held until the expiration of his sentence in 2007. Leisure now seeks a writ of habeas corpus, *see* 28 U.S.C. § 2241, contending that the Ex Post Facto Clause prevents application to him of the 1987 statute and entitles him to release.

Leisure misunderstands how the Ex Post Facto Clause works. He thinks that it gives prisoners the benefits of laws in force at the time of their convictions—and as he was sentenced after the 1984 statute, but before the 1987 repeal, he thinks that this gives him vested rights under the 1984 law. That is not correct. The Ex Post Facto Clause forbids detrimental changes in law after the date of the criminal conduct. *See Weaver v. Graham*, 450 U.S. 24, 28 (1981). The dates of conviction and sentencing are irrelevant. *See Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). Although the 1987 statute may cause problems with respect to persons whose offenses were committed after the 1984 law and before the repeal, *see Lyons v. Mendez*, 303 F.3d 285 (3d Cir. 2002), there is no constitutional problem with respect to crimes committed before the Sentencing Reform Act of 1984. Leisure is in exactly the position he would have occupied had none of the intervening statutes been enacted, so he has no legitimate constitutional complaint. *See Skowronek v. Brennan*, 896 F.2d 264 (7th Cir. 1990); *Norwood v. Brennan*, 891 F.2d 179 (7th Cir. 1989).

*Leisure v. Hastings*, 95 Fed. Appx. 181 (7th Cir. Mar. 24, 2004).

-15-

effective date of the Act); *United States v. Sussman*, 900 F.2d 22, 24 (3d Cir. 1990) ("[W]e reject defendant's argument because we conclude that defendant was never entitled to be sentenced under the sentencing guidelines. Therefore, defendant's Ex Post Facto rights were not violated."); *Tripati v. United States Parole Comm'n*, 872 F.2d 328, 330 (9th Cir. 1989) (per curiam) ("Tripati is not disadvantaged by the [1987] amendment [under the meaning of the *Ex Post Facto* clause] because neither section 235(b)(3) of the SRA as originally enacted nor as amended is applicable to him."); *United States v. Haines*, 855 F.2d 199, 201 (5th Cir. 1988) ("[T]he later 1987 amendment made no change in the law. It merely confirmed the intent of the 1984 statute as Congress had enacted it [not to apply retroactively in violation of the *Ex Post Facto* clause]."); *United States v. Stewart*, 865 F.2d 115, 117-18 (7th Cir. 1988) ("We need only look to Congress' clearly expressed intent that the SRA would apply only to offenses committed on or after the effective date in order to avoid the apparently unconstitutional interpretation urged upon us by Stewart . . . . [And the 1987] amendment clarifying the meaning of the effective date of the SRA further supports our interpretation that Congress never intended, even with respect to the pre-amendment Act, for the SRA to apply to offenses committed prior to November 1, 1987."); *Lightsey*, 846 F.2d at 333 ("[We] face and reject the notion of Ex Post Facto unconstitutionality [in application of the 1987 amendment].");

*cf. United States v. Cooper*, 63 F.3d 761, 762 (8th Cir. 1995) (per curiam) (holding that, even when a defendant committed the last of his crimes after 1992, he had "fair warning" of the total penalty that additional criminal conduct would entail, and that warning was all that the *Ex Post Facto* clause required). *But cf. Lyons v. Mendez*, 303 F.3d 285, 286 (3d Cir. 2002) (holding that the 1987 amendment did constitute a violation of the *Ex Post Facto* clause as applied to increase a prisoner's sentence when the particular upward departures used by the Commission after passage of the amendment would not have been permitted when the prisoner committed his crime).

The *Ex Post Facto* clause is meant "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981); *see also Miller v. Florida*, 482 U.S. 423, 430 (1987); *Dobbert v. Florida*, 432 U.S. 282, 293 (1977). The clause restrains "arbitrary and potentially vindictive legislation." *Weaver*, 450 U.S. at 29. "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment," however, "but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.* at 30.

We thus hold that application of the 1987 amendment to petitioners is not a violation of the *Ex Post Facto* clause because the amendment merely reinstated

the same consequences that petitioners faced when they committed their crimes. Petitioners had fair warning of what their punishments would be, and the 1987 amendment in no way increased their punishments "beyond what was prescribed when the crime was consummated." *Id.* Indeed, because petitioners continue to serve their sentences under the same conditions as when they committed their crimes, the 1987 amendment merely clarified that they were not entitled to the windfall of shorter sentences under the guidelines. *See Norwood v. Brennan*, 891 F.2d 179, 182 (7th Cir. 1989). As other circuits have found before us, petitioners are not entitled to a writ of habeas corpus on this basis.

*Conclusion*

For the reasons stated above, we AFFIRM the district court's denial of a writ of habeas corpus. We GRANT petitioners' motion to substitute counsel and to file a substitute reply brief. We DENY their renewed request for oral argument. Any other outstanding motions are DENIED as moot. The mandate shall issue forthwith.