FILED
United States Court of Appeals
Tenth Circuit

March 27, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

YORIE VON KAHL;
LEONARD PELTIER,

          Petitioners-Appellants,

v.

UNITED STATES OF AMERICA;
ATTORNEY GENERAL OF UNITED
STATES,

          Respondents-Appellees.

No. 06-3348
(D.C. No. 04-CV-3418-RDR)
(D. Kan.)

---

YORIE VON KAHL;
LEONARD PELTIER,

          Petitioners-Appellants,

v.

UNITED STATES PAROLE
COMMISSION; CAMERON M.
BATJER, Former Commissioner of
USPC; CAROL PAVILACK GETTY,
Former Commissioner of USPC;
VINCENT J. FECHTEL, JR., Former
Commissioner of USPC; JASPER R.
CLAY, JR., Former Commissioner of
USPC; SAUNDRA BROWN
ARMSTRONG, Former Commissioner
of USPC; GEORGE MACKENZIE
RAST, Former Commissioner of
USPC; JOHN R. SIMPSON, Former
Commissioner of USPC; EDWARD F.
REILLY, JR., Chairman of USPC;
CRANSTON J. MITCHELL,

No. 06-3370
(D.C. No. 05-CV-3484-RDR)
(D. Kan.)

Commissioner of USPC; DEBORAH
A. SPAGNOLI, Commissioner of
USPC; MICHAEL J. GAINES, Former
Commissioner of USPC; EDWIN
MEESE, III, Former USAG;
RICHARD THORNBURGH, Former
USAG; WILLIAM P. BARR, Former
USAG; JANET RENO, Former USAG;
ATTORNEY GENERAL, Office of the
Attorney General; ERIC H. HOLDER,
JR.,* USAG; UNITED STATES
BUREAU OF PRISONS; J. MICHAEL
QUINLAN, Former Director of BOP;
KATHLEEN HAWK SAWYER,
Former Director of BOP; HARLEY G.
LAPPIN, Director of Bureau of
Prisons,

           Respondents-Appellees.

---

## ORDER AND JUDGMENT**

---

Before **BALDOCK**, **BRORBY**, and **EBEL**, Circuit Judges.

---

\* Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for Michael B. Mukasey as the respondent in this appeal.

\*\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Petitioners-Appellants Yorie Von Kahl and Leonard Peltier, federal prisoners who are serving multiple terms of life imprisonment for the murder of federal law enforcement officers in separate incidents in North Dakota, appeal the dismissal of their 28 U.S.C. § 2241 petitions for writ of habeas corpus, filed during their incarceration at the United States Penitentiary, Leavenworth, Kansas.[1]  They contend that § 235(b)(3) of the Sentencing Reform Act of 1984,

---

[1]   Both suits originally were filed pro se in the Federal District Court for the District of Columbia.  Case No. 06-3348 was filed as a petition for writ of habeas corpus, and Case No. 06-3370 as a civil rights suit.  Neither suit named the petitioners' custodian at Leavenworth as respondent.  The District Court for the District of Columbia transferred both cases to the District of Kansas, over petitioners' objections, reasoning that the warden at Leavenworth was the proper respondent.

A § 2241 petition is properly addressed to the person with custody over the petitioner.  28 U.S.C. § 2242.  While this is generally the warden of the facility where the petitioner is held, authority in this circuit holds that where a habeas petitioner challenges a decision of the United States Parole Commission setting a presumptive parole date, the Commission is the petitioner's de facto "custodian" and is therefore the proper respondent.  *Dunn v. United States Parole Comm'n*, 818 F.2d 742, 744 (10th Cir. 1987).  *Dunn* relied on a broad interpretation of *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973).  *See Dunn*, 818 F.2d at 744.  More recently, the Supreme Court seems to have read *Braden* narrowly.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004).  The Supreme Court has reiterated the proposition that with certain narrowly-defined exceptions, none applicable here,  "the proper respondent [in a habeas case] is the warden of the facility where the prisoner is being held."  *Id.* at 435.  It is therefore possible that *Dunn* is no longer good law, and that the warden at Leavenworth, who has not yet been formally substituted, is the proper respondent.

In any event, failure to name the proper custodian as respondent does not affect our subject-matter jurisdiction, or that of the district court.  *See id.* at 434 n.7; *and see id.* at 451 (Kennedy, J., concurring) (stating that rule requiring habeas action be brought against custodian is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction.").  Whoever the proper respondent may be, the Government has filed a brief on his or its behalf.  We therefore proceed to

(continued...)

-3-

Pub. L. 98-473, Ch. II, § 235(b)(3), 98 Stat. 2032 (Oct. 12, 1984), gave them a right to the issuance of specific parole release dates, and that their continued incarceration violates the Due Process Clause, the Ex Post Facto Clause, and the Bill of Attainder Clause. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that the statutory interpretations upon which these claims rely were rejected in our previous decisions, *Bledsoe v. United States*, 384 F.3d 1232 (10th Cir. 2004), and *Lewis v. Martin*, 880 F.2d 288 (10th Cir. 1989). Therefore, we affirm the district court's dismissal of both cases.[2]

## BACKGROUND

Mr. Peltier was convicted in 1977 in federal district court for the first degree murder of two FBI agents and sentenced to two consecutive life terms. He was subsequently convicted for escape and possession of a firearm and sentenced to consecutive terms totaling seven more years. His convictions have been upheld in the face of multiple challenges. *See Peltier v. Henman*, 997 F.2d 461 (8th Cir. 1993); *United States v. Peltier*, 800 F.2d 772 (8th Cir. 1986); *United States v. Peltier*, 585 F.2d 314 (8th Cir. 1978).

---

[1](...continued)
the merits.

[2]    Although these cases were ultimately assigned to the same district court judge, petitioners did not seek consolidation before the district court. They sought consolidation on appeal, which we denied. Nevertheless, because they are related cases which depend on the same flawed statutory construction, we dispose of them in a single order and judgment.

Mr. Von Kahl was convicted in 1983 in federal district court for offenses involving the murder of two U.S. Marshals in a gun battle and was sentenced to two concurrent life terms, four concurrent ten-year terms consecutive to the life terms, and two concurrent five-year terms consecutive to the ten-year terms, for a total of life plus fifteen years. He was sentenced pursuant to 18 U.S.C. § 4205(b)(2) which provided for release on parole "at such time as the Commission may determine." His conviction was upheld in *United States v. Faul*, 748 F.2d 1204 (8th Cir. 1984).

At the time that both men committed their crimes and were convicted, authority over the terms of federal sentences rested with the U.S. Parole Commission ("Commission"). *See* Parole Commission and Reorganization Act of 1976 ("PCRA"), § 2, Pub. L. No. 94-233, 90 Stat. 219-231 (codified at 18 U.S.C. §§ 4201-4218 (1982)). Both men's offenses are rated Category Eight.[3] They have received parole hearings and statutory interim hearings throughout their incarceration, and neither of them have been granted parole. This Court has rejected Mr. Peltier's previous challenges to the Commission's decisions. *See Peltier v. Booker*, 348 F.3d 888 (10th Cir. 2003).

After each of the petitioners was sentenced, Congress passed the Sentencing Reform Act of 1984 ("SRA"). *See* Pub. L. No. 98-473, 98 Stat. 1987

---

[3]    Offense categories are used as part of a guideline matrix to set the customary total time to be served before release. *See* 28 C.F.R. § 2.20. Category Eight is the highest category of offense severity.

(1984).  The SRA was enacted as Chapter II of the Comprehensive Crime Control Act of 1984 (CCCA), which was itself "an amalgamation of various bills originally drafted in the expectation of being enacted independently of other bills," leading to some ambiguity once consolidated.  *Romano v. Luther*, 816 F.2d 832, 834 (2d Cir. 1987).  "The SRA became effective on November 1, 1987, when it repealed and replaced the PCRA.  Under the SRA, parole was to be abolished, the Parole Commission was to be phased out, and prisoners were to serve uniform sentences under sentencing guidelines." *Bledsoe*, 384 F.3d at 1233 (citations omitted).  Section 235(b)(3) of the SRA, the basis for petitioners' claims, was "a 'winding-up' provision to ensure that the Parole Commission will set release dates for all prisoners sentenced under the old statutes before it goes out of business on November 1, 1992." *Bledsoe*, 384 F.3d at 1234 (quoting *Lewis*, 880 F.2d at 290).  It provided a five year window "after the effective date of this Act" during which the Commission was required to "set a release date, for an individual who will be in its jurisdiction the day before the expiration" of the window.[4]  18 U.S.C. § 3551 note (1998).

---

[4]     Section 235(b)(3) as originally enacted provided:

The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline.  A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the

(continued...)

Soon after the SRA went into effect, however, Congress amended it through the Sentencing Act of 1987, "clarify[ing] that the terms of the PCRA would continue to govern the sentences of those prisoners sentenced prior to the effective date of the SRA." *Bledsoe*, 384 F.3d at 1234; *see* Pub. L. No. 100-182 § 2(b)(2), 101 Stat. 1266 (1987). The Commission would still be required to set release dates before going out of business, but these dates would now be set pursuant to 18 U.S.C. § 4206, as they were prior to the SRA, rather than exclusively within the parole guideline range. *See Bledsoe*, 384 F.3d at 1234.

Beginning in 1990, Congress has repeatedly amended the five-year time-window language of § 235(b)(3), replacing it with larger time spans and thereby effecting a greater life span for the Commission. In 2005, Congress replaced the time-window language with "21 years," which would last until November 1, 2008. *See* United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. No. 109-76, § 2, 119 Stat. 2035 (2005) (codified at 18 U.S.C. § 3551 note). And, most recently, Congress amended that language to extend the life of the Commission an additional three years, replacing the "21 years" with "24 years," until November 1, 2011. *See* United States Parole

---

[4](...continued)
> release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

Pub. L. 98-473, Ch. II, § 235(b)(3) (Oct. 12, 1984).

Commission Extension Act of 2008, Pub. L. No. 110-312, § 2, 122 Stat. 3013 (2008) (codified at 18 U.S.C. § 3551 note).

Numerous prisoners have attempted to capitalize on ambiguities in the drafting of the SRA and Congress's subsequent clarification, arguing that the winding-up provision in § 235(b)(3) requires their release on parole. We have issued opinions rejecting such claims in 1989, *see Lewis*, 880 F.2d at 291, and 2004, *see Bledsoe*, 384 F.3d at 1235-40, along with various unpublished dispositions. Accordingly, the district court rejected each of petitioners' arguments and dismissed their petitions.

## ANALYSIS

Under § 2241, a federal prisoner is entitled to habeas relief if he can show that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). We review a district court's denial of a writ under § 2241 de novo. *Bledsoe*, 384 F.3d at 1235. Petitioners attempt to prove (1) that they were entitled to have a release date set for them, and (2) that this release date should have been set under the parole guidelines, which would already have entitled them to release. Their claims depend largely on erroneous statutory interpretations that we have already rejected.

### 1. Entitlement to Release Date

Petitioners assert that § 235(b)(3) established their right to be provided with release dates. We rejected a similar contention in *Lewis*, where we held that

§ 235(b)(3) "does not require the Commission to take immediate action on the release date of any prisoner." 880 F.2d at 290. We disavowed the notion that the provision could be "transformed from a mere phase-out provision into a sweeping decision to grant earlier release dates to large numbers of federal prisoners currently serving time." *Id.* at 290-91. Instead of vesting rights in prisoners, § 235(b)(3) dealt with "a very specific problem—the need to be sure a parole date is established for all those who will still be in prison the day before the Parole Commission ceases to exist." *Id.* at 291. This conclusion was reaffirmed in *Bledsoe*. *See* 384 F.3d at 1235 ("[P]etitioners have no statutory interest—and therefore no vested liberty interest—in release under the SRA when there is no certainty that they may be in the custody of the Parole Commission when it expires.").

### 2. Effective Date of § 235(b)(3)

Petitioners assert that the effective date of § 235(b)(3) was October 12, 1984. They argue that two consequences flow from this effective date. First, the Commission was required to establish release dates for them within five years of that date. Second, the Commission no longer exists, having expired on October 12, 1989, and any action it has purported to take after that date is therefore void. Petitioners reason that the five year extension enacted on December 1, 1990 and periodically renewed to November 1, 2011, came too late to revive the Commission.

Putting aside the question of whether a belated extension of the Commission's existence would be void, it is clear that petitioners' claim must fail. Our prior cases hold that the five-year period began to run on November 1, 1987, the effective date of the SRA, rather than October 12, 1984, the date the CCCA was enacted. *See Bledsoe*, 384 F.3d at 1233 n.1; *Lewis*, 880 F.2d at 290. [5] Though petitioners urge us to do so, we cannot overrule the prior panel decision in *Bledsoe*. *Thompson R2-J School Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1150 n.6 (10th Cir. 2008), *cert. denied*, 2009 WL 425136, 77 USLW 3369 (U.S. Feb. 23, 2009) (No. 08-800).

**3. Applicability of 1987 Amendment to Petitioners**

Petitioners next assert that the 1987 amendment to § 235(b)(3), continuing the PCRA regime for inmates sentenced prior to the effective date of the SRA, applied only to offenses committed after December 7, 1987, and therefore does not apply to them. Thus, they contend, they were entitled to a parole date under the original version of § 235(b)(3), within the parole guidelines rather than the PCRA. In support, they quote § 26 of the Sentencing Act of 1987, which

---

[5] Any statement to the contrary in *Dallis v. Martin*, 929 F.2d 587, 589 & n.4 (10th Cir. 1991), was dicta and was not binding on the panel in *Bledsoe*. In both *Bledsoe* and *Lewis*, we followed the Second Circuit's lucid reasoning in *Romano*, 816 F.2d at 837, that § 235(b)(3)'s reference to the effective date of "this Act" properly refers to the SRA rather than the entire CCCA. Moreover, the Third Circuit's disagreement on this point does not unsettle our conclusion. *See Lyons v. Mendez*, 303 F.3d 285, 292 (3d Cir. 2002) ("Seeing no clear contrary intention in the text, we hold that § 235(b)(3) took effect upon enactment on October 12, 1984.").

provided a general effective date, declaring "[t]he amendments made by this Act shall apply with respect to offenses committed after the enactment of this Act." Pub. L. No. 100-182, § 26, 101 Stat. 1266 (1987).

Petitioners' theory was not directly addressed in our prior cases, but simple logic precludes it. We agree with the district court that "despite Congress' imprecision in sticking a general non-retroactivity provision in the Sentencing Act of 198[7], the specific amendment to Sec. 235(b)(3) was not thereby rendered applicable to the opposite set of inmates than that which it was created to cover." Aplt. App., No. 06-3348, at 53. Because § 235(b)(3) as originally enacted had no application to prisoners sentenced after the SRA went into effect on November 1, 1987, it would be absurd to read the 1987 amendment to § 235(b)(3) as inapplicable to all the prisoners sentenced prior to the effective date, leaving essentially *no one* affected by the amendment. The context of the statute precludes such an application of § 26.

Petitioners' further assertion that § 235(b)(3) eliminated the Commission's discretion to exceed the parole guidelines and ordered release dates to be set is partially true, but it has no application here. *Lewis* states that in § 235(b)(3), as originally enacted, "Congress chose not to require service of [certain prisoners'] maximum sentences but instead to afford them release on parole within their applicable parole guideline ranges." *Lewis*, 880 F.2d at 291. However, as previously explained, that provision has direct application only to prisoners still

-11-

incarcerated "the day before the Parole Commission ceases to exist," *id.*, and does not provide a vested right to all prisoners. Thus it did not give a settled right to issuance of a release date within five years, even though the original window for action was five years. Further, the 1987 amendment "delete[d] the clause requiring the Commission to set release dates within the guideline range." *Id. at* 290. That change restored the Commission's authority to set release dates pursuant to 18 U.S.C. § 4206, "which permits release dates outside the guideline range." *Id.* Petitioners' arguments lack merit.

### 4. Upper Limits to Parole Guidelines

The district court concluded that "[a] final, simple answer to all petitioners' claims is that . . . each has an offense severity rating of Category 8, which puts him in a guideline range with no specified upper limit." Aplt. App., No. 06-3348, at 57. We agree. Thus, even if § 235(b)(3) required the Commission to set a release date, the Commission did not violate that statute by denying parole to petitioners, because the denial was within each petitioner's unlimited guideline range. Petitioners contend, however, that the parole guideline for their offenses does contain an upper limit, set at 48 months above the lower limit established by Commission regulations. Thus, they argue, under § 235(b)(3), the Commission could and should have established a firm release date under the guidelines for them.

The guidelines for Category Eight range from "100+" to "180+" months, depending on offender characteristics. 28 C.F.R. § 2.20. A guideline note for Category Eight explains that "no upper limits are specified due to the extreme variability of the cases within this category." *Id.* § 2.20 n.1. The note further provides that "[f]or decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching its decision, which may include the absence of any factors mitigating the offense." *Id.* Petitioners assert that this requirement of a statement of reasons required the Commission to establish a firm release date for them.

The guideline note goes on to explain, however, that this practice of providing a statement of reasons should not be read "to suggest that a grant of parole is to be presumed for any class of Category Eight offenders." *Id.* Thus, the guidelines themselves foreclose petitioners' argument. *See Madonna v. U.S. Parole Comm'n*, 900 F.2d 24, 26 (3d Cir. 1990) (stating, with regard to argument identical to that advanced by petitioners, that the "guidelines themselves . . . explain this practice and foreclose [the petitioner's] interpretation of it.").[6]

---

[6]     Petitioners also argue that the language of § 2.20, establishing that there is "no upper limit" to the parole guideline for Category Eight offenses, itself represents an Ex Post Facto violation as applied to them. *See* Aplt. Br., No. 06-3348, at 22-23. They fail to show that they raised this argument before the district court; accordingly, we do not consider it.

**5. Additional Constitutional and Statutory Arguments**

In light of the statutory and regulatory framework discussed above, we can easily reject petitioners' claim that "retroactive" application of the 1987 amendment violates the Due Process, Ex Post Facto, and Bill of Attainder Clauses, and the related claim that application of the 1987 amendment to them violates the Congressional mandate. Because petitioners had no upper guideline range under their Category Eight classification, the original version of § 235(b)(3) did not narrow the discretion of the Commission in selecting a release date for them; consequently, the 1987 amendment reinstating the Commission's authority to issue release dates outside the guideline range, pursuant to 18 U.S.C. § 4206, had no effect on them. This is one reason they have suffered no constitutionally cognizable harm.

Furthermore, as we held in *Bledsoe*, there was no Ex Post Facto Clause violation because the applicable sentencing law is no harsher now than when petitioners committed their crimes. *See Bledsoe*, 384 F.3d at 1239. They remain subject to the same provisions that were then applicable, and any short-lived changes are irrelevant.

Application of the 1987 amendment to these petitioners creates no due process violation because "petitioners have no statutory interest—and therefore no vested liberty interest—in release under the SRA" because "there is no certainty that they may be in the custody of the Parole Commission when it

expires." *Id. at* 1235. The Bill of Attainder Clause is not implicated because petitioners have not been targeted as "identifiable individuals." *Id.* at 1238.

Further, for the reasons we explained above, contrary to petitioners' reading of the 1987 amendment, Congress did not mandate that the amendment apply only to post-1987 convictions. Therefore, application of the 1987 amendment to petitioners could not violate a Congressional mandate. In sum, Mr. Von Kahl and Mr. Peltier have not established that their incarceration is in violation of the Constitution or a statute; as long as Congress continues to extend the Commission's existence, Mr. Von Kahl and Mr. Peltier properly remain under the Commission's authority. Therefore, the district court's dismissal of both cases is **AFFIRMED**. Mr. Von Kahl's motion to supplement the record is denied.

Entered for the Court


Wade Brorby
Circuit Judge

-15-